CHARLOTTE I. THOMPSON v. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES.

(Filed 2 July, 1930.)

**1. Principal and Agent C b—Where act of agent is beyond real and apparent authority the principal is not bound thereby.**

Where the act of an agent is beyond the actual and apparent scope of his authority, the principal is not bound or liable to third persons therefor, and the principle that where one of two innocent persons must suffer for the wrong of another, the one who first reposes confidence in the wrongdoer must suffer the loss does not apply in such cases, nor will the principal be bound as in case of a secret limitation in the absence of some act in ratification or knowingly receiving the benefits of the contract.

**2. Same—Where party knowingly deals with agent of limited authority he must inquire into extent of agent's powers.**

A person who deals with an agent whose authority is known by him to be limited must inquire as to the extent of the agent's authority if he would hold the principal liable for the act of the agent.

**3. Insurance C b—In this case held: soliciting agent did not have apparent authority to collect money in excess of first premium and insurer was not liable therefor.**

A soliciting agent of an insurance company is without actual authority to receive for the insurer any money except for the first annual premium, and where a person knowing that such agent is solely a soliciting agent, pays to such agent several annual premiums upon his representations of increased benefits, and obtains a receipt on the company's form from the agent which recites that the sum was for the first annual premium, and the insured knew that the sum paid by her was in excess of the first annual premium: *Held,* the insured was put on notice that the agent had authority to receive only the first annual premium, and by the exercise of due care would have ascertained the limited authority of the agent, and the act of the agent in receiving several annual premiums was beyond the real or apparent scope of his authority, and upon the agent's failure to turn in the application for the policy and the money to the company, and its failure to issue the policy, the plaintiff can recover only the amount of the first annual premium from the company.

**4. Same—Insurance agent is authorized to receive only money in payment of premiums.**

An agent of an insurance company having authority to collect premiums for the company cannot accept anything but money therefor, but this principle does not apply to the facts of this case where the agent was without actual or apparent authority to collect any amount in excess of the first annual premium, and the bonds collected by him were in payment of subsequent premiums.

CLARKSON, J., dissenting; STACY, C. J., concurs in dissent.

APPEAL by plaintiff from *Daniels, J.,* at October Special Term, 1929, of HARNETT. Affirmed.

This is an action to recover of defendant the sum of $521.00, paid by plaintiff to O. A. Moran, an agent of defendant.

The action was heard on a statement of facts agreed which is as follows:

"1. That on 8 March, 1928, and for some years prior and for some time thereafter, O. A. Moran was the duly authorized agent of the defendant for the purpose of representing the defendant in the solicitation of applications for policies, both on the lives of applicants and what was known as retirement annuity policies in the territory including and surrounding the town of Faison, in the county of Duplin, North Carolina, the territory in which he was such agent included the towns of Goldsboro, Mount Olive, and other towns.

2. That the said O. A. Moran was in good standing with the company and regarded as a good agent.

3. That among the duties conferred by the defendant upon their said agent was to represent to the proposed applicants the kind of policies issued by the defendant company, the expense of such policies to the proposed applicants and the benefits to be derived by the assured with respect to each class of policies issued by the defendant society.

4. That on 8 March, 1928, the said O. A. Moran, as agent of the defendant society solicited the plaintiff to accept a policy of the defendant known as retirement annuity policy, explaining to her as hereinafter set forth, the price and benefits to be derived from said policy, and procured an application from said plaintiff in writing for such policy and collected from the plaintiff simultaneously with the signing of said policy as premium on the policy to be issued, the sum of $121.00 in cash and four Liberty Bonds of $100 each, all of the value of $521.00. That said application was never turned in to the defendant and the said defendant knew nothing of the transaction until informed by letter from the plaintiff dated 7 March, 1929, which said letter is copied in the answer, and made a part of this agreed statement.

5. That the defendant's said agent, O. A. Moran, represented to the plaintiff in connection with said application that the benefits among others to be derived from the policy that he was offering to sell her, and for which he represented to her that he was making application was analogous to a savings account; that the more she put into the policy at present, the larger would be the annuity which the defendant society would pay to her; and that she could pay the premiums quarterly, semiannually or for as many years in advance as she desired; that the larger the initial payment, the larger in proportion would be the annuity or dividend payable to her by the company; that the defendant society

was one of the largest insurance companies in the world, and was as solvent and trustworthy as the United States Government, and induced her to pay said large sum in advance, which he fraudulently converted to his own use and never sent any application whatever to the defendant society and no policy has been issued by said society to the plaintiff.

6. That upon the plaintiff paying the defendant's said agent the sum of $521.00 in the manner before set out, the defendant's said agent delivered to her an official receipt on form furnished by the defendant society in words and figures as follows:

'No. A-233429.

'Received of Mrs. Charlotte Ireland Thompson five hundred twenty-one and no/100 dollars, the first annual premium on proposed retirement-annuity on the life of Mrs. Charlotte Ireland Thompson, for which an application bearing a corresponding number as above is this day made to the Equitable Life Assurance Society of the United States. This retirement-annuity policy, subject to the terms and conditions thereof, shall take effect as of the date of this receipt, provided the person upon whose life the annuity depends is on this date in the opinion of the society's authorized officers in New York an acceptable risk and the application is otherwise acceptable on the plan and for the amount and at the rate of premium applied for; otherwise the payment evidenced by this receipt shall be returned on demand and the surrender of this receipt.

Dated at Faison, N. C., 8 March, 1928.

O. A. MORAN, Agent.

This receipt must not be detached unless first premium is collected.'

7. That on 6 July, 1928, O. A. Moran, agent of the defendant, informed plaintiff that he had obtained a receipt from the United States Government for said bonds, and that at the maturity of said bonds in September, 1928, the bonds would be paid, and that in the meantime the plaintiff was accumulating interest at the rate of 4¾ with the defendant society, and that the said agent had been transferred to the Wilmington office and would not be in the Faison section until the fall of 1928, and that he would call upon the plaintiff during the fall of 1928.

8. That on 7 March, 1929, the plaintiff having been informed by H. T. Ray, a school teacher residing in Faison, N. C., that he was unable to obtain a similar policy applied for by him through the said agent, O. A. Moran, he advised the plaintiff to write C. C. Hazzell, manager of the society at Raleigh, N. C.

9. That on 7 March, 1929, and again on 14 March, 1929, the plaintiff informed the manager of the defendant society at Raleigh, N. C., of the payment of $521 to the said O. A. Moran, agent.

10. That on 16 March, 1929, the plaintiff in person delivered the said official receipt to said defendant's manager at Raleigh for the purpose of inspection.

11. That prior to the dates herein alleged the defendant had constituted O. A. Moran its agent under a written contract, the original of which or a copy thereof will be furnished to the court by the defendant. That the following is section 8 of the said contract:

'8. The agent is not authorized to make, alter or discharge contracts for the society, or waive forfeitures, grant permits, name special rates, guarantee dividends, or bind the society in any way, and is not under any circumstances authorized to receipt for deferred or renewal premiums, or to make any endorsement on the policies of the society; and his powers shall extend no further than as herein expressly stated; the agent shall not receive any moneys due or to become due to the society, unless authorized in writing.'

12. That the plaintiff had no knowledge of the contents of said written contract, nor of any specific limitation upon the agency of said O. A. Moran until after this action had been instituted and she was so advised by the answer filed by the defendant therein.

13. That the territory in which O. A. Moran was authorized to act as agent for the defendant included the town of Faison in which the plaintiff resided, and said agent was authorized by the defendant to accept at the time of taking an application the initial premium for the policy applied for and to give a receipt on an official form furnished him by the defendant, said form being as set forth in paragraph 6 hereof.

14. That the defendant, prior to the institution of this action, tendered to the plaintiff the sum of $105 representing the amount of the first premium that would have been due on said policy and being the only amount that the said agent Moran would have had authority to collect as premium on the policy applied for by the plaintiff, under his agency contract.

It is further agreed that this cause may be heard before Honorable Frank A. Daniels, resident judge of the Fourth Judicial District, either in or out of the district."

Upon the foregoing statement of facts agreed, judgment was rendered as follows:

"This cause coming on to be heard before Hon. F. A. Daniels, resident judge of the Fourth Judicial District, by consent of the parties, and upon an agreed statement of facts; and the court finding that agent O. A. Moran collected of the plaintiff the sum of $521.00, of which $105 was the first premium on the policy applied to said agent for by the plaintiff, and the court being of the opinion that the agent could

legally collect only the amount of the first premium under the agency contract set out in the case agreed:

Now, therefore, it is ordered and adjudged that the plaintiff recover of the defendant the sum of $105, which was tendered to the plaintiff by the defendant, and being the amount of the first premium, and that the plaintiff pay the costs of this action.

F. A. DANIELS, *Judge, etc.*

This 1 February, 1930."

From this judgment, plaintiff appealed to the Supreme Court.

*Clifford & Williams for plaintiff.*
*S. Brown Shepherd for defendant.*

CONNOR, J. At the trial of this action in the Superior Court, it was agreed by the parties that O. A. Moran, as the agent of the defendant, was duly authorized to solicit applications, to be submitted by him to the defendant, for policies of insurance on the lives of the applicants, and also for "Retirement Annuity Policies." It is not contended that he had authority to issue policies in the name of the defendant, or to bind the defendant by contracts with respect to the same. He was required to submit all applications for policies procured by him to the defendant at its home office in the city of New York, for acceptance or rejection by the duly authorized officers of the defendant. He was, therefore, not a general agent of the defendant; he was merely a soliciting agent, with such powers as are ordinarily incident to such an agency. He had no authority to receive money in payment of premiums for policies which had been issued by the defendant. He was authorized to receive and remit to the defendant money in payment only of the first annual premium on a policy applied for.

In 32 C. J., at page 1067, it is said: "A soliciting agent is merely a special agent, and as a general rule, has authority only to solicit insurance, submit applications therefor to the company, and perform such acts as are incident to that power. He may bind the company by agreements and representations properly made in connection with the application for the insurance, but ordinarily has no authority to bind it by attempted acts or contracts in its behalf, relating, not to the taking of the application, but to the subsequent contract of insurance, or to other matters not connected with the application and not within the real or apparent scope of his authority." In the instant case, it is agreed that the agent of the defendant to whom the plaintiff paid the sum of $521.00 as premiums for the policy applied for, had no actual or real authority to receive for the defendant any money except for the first annual premium. It is agreed that the first annual premium was $105.00.

All the money paid by the plaintiff to defendant's agent in excess of this sum, was received by such agent without actual or real authority from the defendant. Defendant is, therefore, not liable for such excess, and was not bound by any act of its agent with respect thereto, unless its agent had apparent authority to receive such sum, and to bind the defendant by a contract with respect to said sum.

When plaintiff was solicited by O. A. Moran for an application to the defendant for a policy of insurance, she knew that the said O. A. Moran was merely a soliciting agent of the defendant—that is, an agent with limited authority from his principal. It is well settled as a principle of the law of principal and agent that an agent with limited authority cannot bind his principal by an act which is beyond the scope, actual or apparent, of the authority conferred upon him by his principal. In *Robinson v. Brotherhood of Locomotive Firemen and Engineers,* 170 N. C., 545, 87 S. E., 537, it is said: "We see no reason why, in a case of limited or restricted agency, the general doctrine applicable should not prevail, to the effect that one who deals with an agent of that kind, having notice of restrictions put upon his power, is bound by such limitations and may not insist on a contract which he knows is in excess of the power conferred." The principal is not bound by or liable for the act of his agent which is beyond the actual, and not within the apparent scope of the agent's authority. It is therefore held that a person who deals with an agent whose authority is known by him to be limited, must inquire as to the extent of the agent's authority, if he would hold the principal liable for the act of the agent. *Swindell v. Latham,* 145 N. C., 144, 58 S. E., 1010. Where the act of the agent, although beyond the actual scope of his authority, is within its apparent scope, and the person dealing with the agent acts in good faith, and with reasonable prudence, the principal is bound. "The apparent authority, so far as third persons are concerned, is the real authority, and when a third person has ascertained the apparent authority with which the principal has clothed the agent, he is under no further obligation to inquire into the agent's actual authority. The authority must, however, have been actually apparent to the third person, who in order to avail himself of rights thereunder, must have dealt with the agent in reliance thereon, in good faith, and in the exercise of reasonable prudence, in which case the principal will be bound by the acts of the agent performed in the usual and customary mode of doing business, although he may have acted in violation of private instructions, for such acts are within the apparent scope of his authority. An agent cannot, however, enlarge the actual authority by his own acts without some measure of assent or acquiescence on the part of his principal, whose rights and liabilities as to third persons are not affected by any apparent authority

which his agent has conferred upon himself simply by his own representations, express or implied. Although these rules are firmly established, their application to particular cases is extremely difficult. The liability of the principal is determined in any particular case, however, not merely by what was the apparent authority of the agent, but by what authority the third person, exercising reasonable care and prudence, was justified in believing that the principal had under the circumstances conferred upon his agent." *R. R. v. Smitherman,* 178 N. C., 595, 101 S. E., 208. In *Graham v. Insurance Co.,* 176 N. C., 313, 97 S. E., 6, the plaintiff having failed to show any authority from the company to its soliciting agent, to whom she had given her application for the policy issued by the company, to bind the company by her act, a judgment of nonsuit was affirmed. *Brown, J.,* in his opinion in that case, quotes with approval the principle stated by *Ruffin, J.,* in *Biggs v. Insurance Co.,* 88 N. C., 141, as follows: "Where one deals with an agent it behooves him to ascertain correctly the extent of his authority and power to contract. Under any other rule, every principal would be at the mercy of his agent, however carefully he might limit his authority. It is true the power and authority of an agent may always be safely judged of by the nature of his business, and will be deemed to be at least equal to the scope of his duties." See *Foscue v. Insurance Co.,* 196 N. C., 139, 144 S. E., 689.

In the instant case, at the time she signed the application for a policy of insurance, upon the solicitation of defendant's agent, and paid to said agent the sum of $521.00, upon his representation that he had authority to receive the said sum, and to bind the defendant to return the same if the policy was not issued, plaintiff knew that the annual premium for said policy was $105.00, and that the sum paid by her to the said agent was in excess of the said sum; the official receipt for the sum paid by her to said agent recites that said sum of $521.00 was "the first annual premium on the proposed Retirement Annuity policy" on her life, and that said receipt should not be detached "unless the first premium is collected." Plaintiff was thus put on notice that the agent had authority to receive only the first annual premium, which she knew was $105.00. Had she exercised reasonable prudence and due care she would have ascertained that the agent had no authority to receive money from an applicant for a policy of insurance to be issued by the defendant in excess of the first annual premium. Upon the facts agreed in the instant case, the act of the agent was not only beyond the scope of his actual authority; it was not within its apparent scope. We are therefore of opinion that there was no error in the judgment that plaintiff recover of the defendant only the sum of $105.00, the sum

which the agent had authority to receive from her at the time she delivered to him her application.

While the instant case is differentiated in some respects, upon the facts, from *Lauze v. New York Life Ins. Co.* (N. H.), 68 Atl., 31, cited and relied upon by defendant, the judgment herein is in accord with the principles on which that case was decided. In that case, it was held that the apparent scope of the authority conferred by the company on the agent did not extend beyond soliciting, negotiating and delivering the contract. It was held that the agent had no authority, actual or apparent, to receive from the insured money in payment of a premium which became due after the issuance of the policy, notwithstanding the provisions of a statute in force in New Hampshire, identical with C. S., 6304. The statute by its terms applies only to the agent who negotiates the contract, and is limited in its application to the first or initial premium. In the absence of express authority from the company, the agent who solicited the application has no power to bind the company by the receipt of money in payment of premiums which become due after the issuance of the policy. Such agent has power, under the statute to receive only the first premium which brings the policy into force, when the application is accepted by the duly authorized officers of the company.

It is said that this is a hard case. So it is. The plaintiff cannot, we think upon the facts agreed, invoke the equitable principle that where one of two persons must suffer loss by the fraud or misconduct of a third person, he who first reposes the confidence, or by his negligent conduct made it possible for the loss to occur, must bear the loss. In proper cases, this principle is often applied by the courts, but we find nothing in the facts agreed in this case, which calls for its application.

We have not overlooked the fact in this case that plaintiff made the payment to defendant's agent partly in money and partly in Liberty Bonds. It is well settled that an agent for an insurance company, authorized to receive money in its behalf in payment of premiums, has no authority to receive anything except money, and that the company is not bound by a payment made otherwise than in money. This principle has no application in the instant case, however, as the judgment is that plaintiff recover of defendant a sum less than the money received by the agent. Plaintiff was denied recovery of any sum on account of the Liberty Bonds.

We find no error in the judgment. It is

Affirmed.

CLARKSON, J., dissenting: This is not an action between a principal and agent where the scope of the agent's authority is the authority actu-

ally conferred upon him by the principal, but this is an action by a third party and a different principle is applicable. Confusion has arisen in the decisions on the subject when the distinction is not kept in mind.

The principles applicable to the facts in this action are set forth in *R. R. v. Smitherman,* 178 N. C., at p. 598-9, as follows: "While as between the *principal and agent* the scope of the latter's authority *is that authority which is actually conferred upon him by his principal,* which may be limited by *secret instructions and restrictions,* such instructions and restrictions do not affect third persons ignorant thereof, and *as between the principal and third persons* the mutual rights and liabilities *are governed by* the apparent scope of the agent's authority, which is that authority which the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possesses, and which the principal is estopped to deny. *The apparent authority, so far as third persons are concerned, is the real authority,* and when a third person has ascertained the apparent authority with which the principal has clothed the agent, he is under no further obligation to inquire into the agent's actual authority. The authority must, however, have been actually apparent to the third person, who, in order to avail himself of rights thereunder, *must have dealt with the agent in reliance thereon, in good faith, and in the exercise of reasonable prudence,* in which case the principal will be bound by the acts of the agent performed in the usual and customary mode of doing such business, *although he may have acted in violation of private instruction, for such acts are within the apparent scope of his authority.*" (Italics mine.) *Bank v. Hay,* 143 N. C., 326; *Trollinger v. Fleer,* 157 N. C., 81; *Powell v. Lumber Co.,* 168 N. C., 632; *Furniture Co. v. Bussell,* 171 N. C., 474; *Cardwell v. Garrison,* 179 N. C., 476; *Bobbitt Co. v. Land Co.,* 191 N. C., 323; *Sears, Roebuck & Co. v. Banking Co.,* 191 N. C., 500; *Bank v. Sklut,* 198 N. C., 589.

Page, in his valuable work on Contracts, Vol. 3, 2d ed., part sec. 1760, at p. 3018, states the matter thus: "Outside of the class of public agents the actual authority conferred by a principal *upon his agent is practically inaccessible to the public at large.* Accordingly, persons who do not know what the *agent's authority really is, are justified in dealing with him upon the assumption that he has the authority which the principal indicates by his conduct that the agent possesses.* Thus dealing with the agent, such persons may hold the principal on contracts *outside the real authority of the agent but inside his apparent authority.*" (Italics mine.)

C. S., 6304, is as follows: "An insurance agent or broker who acts for a person other than himself in negotiating a contract of insurance is, for the purpose of receiving the premium therefor, the company's agent,

whatever conditions or stipulations may be contained in the policy or contract. Such agent or broker knowingly procuring by fraudulent representations payment, or the obligation for the payment, of a premium of insurance, shall be punished by a fine of not less than one hundred nor more than five hundred dollars, or be imprisoned for not more than one year." This salutary statute says *premium,* it does not limit it to the *first premium* as defendant contends the *secret contract* with its agent does.

The findings of fact by the court below, agreed upon by the parties, are to the effect: That one O. A. Moran was the duly authorized agent of defendant on 8 March, 1928, and for some years prior and some time thereafter, and his territory as such agent included the town of Goldsboro, Mount Olive and other towns. Among the duties conferred by the defendant upon its said agent was to represent to the proposed applicants the kind of policies issued by the defendant company, the expense of such policies to the proposed applicants and the benefits to be derived by the assured with respect to each class of policies issued by the defendant society. That on 8 March, 1928, the said O. A. Moran, as agent of the defendant society solicited the plaintiff, who lived in the agent's territory, to accept a policy of the defendant known as retirement annuity policy, explaining to her the price and benefits to be derived from said policy, and procured an application from said plaintiff in writing for such policy and collected from the plaintiff simultaneously with the signing of said application, as premium on the policy to be issued, the sum of $121 in cash and four Liberty Bonds of $100 each, all of the value of $521. That said application was never turned in to the defendant and the said defendant knew nothing of the transaction until informed by letter from the plaintiff dated 7 March, 1929.

The defendant company, the principal and Moran his agent, had a *secret agreement,* as above set forth, unknown to plaintiff, that the agent "is not under any circumstances authorized to receipt for deferred or renewal premiums." At the time he had this *secret agreement* with defendant he had been for years an agent for defendant selling insurance in Goldsboro, Mt. Olive and other towns. He had authority to represent to the applicant for insurance the kind of policies issued, the expense of such policies, the benefit to be derived by the assured with respect to each class of policies issued by defendant company. He had an official receipt, the one in the present case, No. A 233429 furnished him by the defendant company. On this receipt, furnished him by the company, he receipted her for $521.

Under all this indicia of apparent authority he, as agent of defendant company for long years in that locality, solicited the plaintiff to accept a policy known as a retirement-annuity policy and collected at the time

as premium on the policy to be issued the sum of $121 in cash and four Liberty Bonds of $100 each, all of the value of $521. The other representations made to plaintiff to obtain this money I need not repeat—they are set forth above. At the time he collected this $521, defendant had this *secret agreement with its agent,* unknown to plaintiff, that its agent had authority only to collect the amount of the first premium, $105. These representations were made at the time to procure the contract, and it is unthinkable that defendant, having given his agent all the apparent authority can now claim it is not liable for its agent's representations by setting up a *secret agreement.* This Court may rely on an opinion of the New Hampshire Court, but, speaking for myself, such law is foreign to all sense of justice. With all the indicia of authority to obtain plaintiff's money, which she paid in good faith, and now defendant refuses to return it on a *secret agreement unknown to plaintiff* is putting a premium on *secret dealings,* which is abhorred in business methods and frowned on by law.

It is well settled in this jurisdiction: "Where one of two persons must suffer loss by the fraud or misconduct of a third person, he who first reposes the confidence, or by his negligent conduct made it possible for the loss to occur, must bear the loss." *R. R. v. Kitchen,* 91 N. C., at p. 44; *Bank v. Liles,* 197 N. C., at p. 418.

The defendant held this agent out for years with all the authority to solicit certain kinds of insurance for it, with the official receipt on forms furnished by the defendant, with official numbers on them. The receipt given shows *no secret agreement* between defendant and its agent. The agent made enticing and alluring representations of what his company was giving her; she relied on this agent's apparent authority, in good faith, and defendant's agent obtained from her five premiums on the policy that he had a right to solicit, amounting to $521. Now the defendant company contends that it had with its agent a *secret agreement,* unknown to plaintiff, and refuses to either give her the insurance purchased or return the $521. Such conduct on the part of defendant should not be upheld by this Court. It puts the general public at the mercy of agents sent out to solicit insurance with all the paraphernalia of authority, but limited by a *secret agreement,* unknown to the unsuspecting public. The facts in this case disclose that plaintiff has been cheated and defrauded by an agent of the defendant company, for years in its service, who had the power to solicit insurance with all the indicia of authority. The agent representing he had authority to take plaintiff's hard earned money, part in Liberty Bonds, saved no doubt by her for a "rainy day," converting from the agent's representations the Liberty Bonds into a better insurance investment. The agent has gotten plaintiff's money from her by his apparent authority, and a *secret agree-*

*ment* between the principal and agent should not be allowed to defeat this recovery. Such secret conduct in a case of this kind should not be tolerated by this Court, whatever the New Hampshire Court may hold. That decision is only persuasive, if that, in this Court. Such *secret agreement* between the principal and agent cannot prevail against the apparent authority of the agent which was relied on by plaintiff in good faith. The main opinion, to my mind, is contrary to the weight of authority in the nation and settled law in this jurisdiction. I can see no reason why defendant, an insurance company, is not bound by the settled law in cases of this kind that apply to others. It is a matter of common knowledge that companies like defendant require bonds from their agents, to protect them, when the agents are sent out to solicit insurance from the general public.

In *Bank v. Winder,* 198 N. C., p. 18, the matter has recently been thoroughly discussed in reference to ownership of personal property, and by analogy is controlling. It is there said, p. 21, citing a wealth of authorities: "But an estoppel will arise against the real owner when he clothes the person assuming to dispose of the property with the apparent title to it, and the person setting up the estoppel, relying upon the fact, parts with something of value or extends credit on the faith of such apparent ownership. 10 R. C. L., 777, sec. 91. The controlling principle is this: Where the owner of personal property clothes another with the indicia of title, or allows him to appear as the owner, or as having the power of disposition, an innocent third party dealing with the apparent owner will be protected."

In Couch Cyc. of Ins. Law, Vol. 2 (1929), p. 1479-80, and part of section 517, is in full accord with the decisions of this and other courts on the subject. We find: "It is within the power of an insurance company, as between itself and its agent, to define and limit the powers of the latter, but it is equally well settled that the rights of innocent third parties dealing with an agent, within the apparent scope of his authority, cannot be affected by private instructions to such agent, of which they have no notice or knowledge, or by secret limitations upon his authority. In fact, it is clear that insurance companies are responsible for the acts of their agents within the general scope of their business intrusted to their care, and that no limitations of their authority will be binding on parties with whom they deal, which are not brought to the knowledge of those parties, especially where such persons rely in good faith upon his apparent authority. Undoubtedly, if an officer of an insurance company assumes to possess certain powers, and the nature of his employment justifies the assumption of authority, and the party dealing with him has no notice of want of the claimed authority, and there is nothing to warrant an inference to the contrary, the company is bound, even though

he had no such power as claimed. And it would seem to be especially true, as it has been held, that limitations upon the powers of, or secret instructions to, a general agent, do not bind third persons dealing with him without notice thereof; also, that it is no defense that the general agent departed from private instructions when acting within the general scope of his authority, unless such instructions be made public, or the insured has notice, or unless the party dealing with the agent is, by reason of the attendant circumstances, or something in the nature of the business, or by custom, or by a course of dealing, or otherwise, put upon inquiry as to the exact limits of the agent's authority. . . . (p. 1482). With respect to private restrictions as affecting the powers or authority, express or implied, of subagents, it is held, in application of the principle, that neither corporations nor individuals can escape their honest liabilities by secret understandings between principals and agents; that if a person is employed as agent of a life insurance company, but, by a secret contract between him and the company's general agent, he is to be simply a subagent, and he is held out as agent of the company, with the power to collect and pay over premiums to its general agent, the company must answer for collections made by him, but not turned over to it," etc.

There is nothing to indicate in the findings of fact that plaintiff knew or in the exercise of due care might have known that defendant's agent did not have authority to receipt for her $521.

In fact, the twelfth finding shows to the contrary: "That the plaintiff had no knowledge of the contents of said written contract, nor of any specific limitation upon the agency of said O. A. Moran until after this answer filed by the defendant therein."

This finding is inadvertently overlooked in the main opinion. The agent of defendant took $121 in cash and four Liberty Bonds, the equivalent about which no question is raised, and gave the receipt for $521 cash, and in the receipt called it "the first annual premium on proposed retirement annuity," etc. Defendant's agent deceived plaintiff, and by the receipt called it the first annual premium, and should be the loser. How did plaintiff know that defendant's agent only had the right to take money—he took the equivalent as money and receipted her for $521. Then again, the receipt says "This receipt must not be detached unless first premium is collected"—that is exactly what was done, the first premium and more was collected.

I am authorized to say that the *Chief Justice* concurs in this dissent.