76 P.2d 952

**HAM v. ELLIS et al.**

No. 4192.

Supreme Court of New Mexico.

Nov. 17, 1937.

Rehearing Denied March 8, 1938.

W. H. Patten, of Hobbs, and Tom W. Neal, of Lovington, for appellees.

MOISE, District Judge.

This is an action by Jeff M. Ham to foreclose a mortgage securing notes in the amount of $7,350 executed by Doll Turland. Two causes of action are set forth in the amended complaint; one asking judgment on the notes and seeking foreclosure of the mortgage, and another alleging that the defendant Doll Turland had removed improvements, and seeking damages for such removal in the amount of $1,000, and the appointment of a receiver. Will Terry is made a party defendant under an allegation that he claims some right in the property adverse to the plaintiff by assumption of the mortgage and notes, or otherwise.

Answers were filed on behalf of the defendant Will Terry and on behalf of the defendant Doll Ellis, formerly Doll Turland, issues were joined, and the case tried to the court.

C. D. Ham was by order made a party defendant, and appeared and answered in the case.

Judgment was entered for plaintiff for four-ninths of the amounts due on the notes and foreclosing the mortgage on 640 acres of the land in suit, and quieting title to 800 acres of the land in the defendant Will Terry.

All of the parties to the action prayed and were allowed appeals to this

G. L. Reese, Sr., and Lake J. Frazier, both of Roswell, for appellant.

court. The appeal of the defendant Doll Ellis (formerly Doll Turland) was not perfected, and accordingly the judgment of the lower court will be affirmed as to her.

The facts in the case are as follows: (For purposes of this discussion the appellant, Jeff M. Ham, will be denominated plaintiff, and the appellee Will Terry will be denominated defendant. The other parties will be referred to by name.)

Prior to August 15, 1929, the plaintiff owned 640 acres of land in Lea county, N. M., and C. D. Ham, the father of the plaintiff, owned 800 acres of land. On that date Doll Ellis (formerly Doll Turland) purchased the land, and executed and delivered to the plaintiff her notes in the principal amount of $7,350, and a mortgage securing the payment thereof covering the 1,440 acres of land purchased.

Some time prior to September 1, 1931, J. H. Atwood approached C. D. Ham and stated that he could sell the real estate for $6,000 if a release of plaintiff's mortgage and a surrender of the notes could be procured. C. D. Ham, without consulting plaintiff, or obtaining any authority from him, agreed to the proposition, and thereupon executed a release of the mortgage and a deed, signing the plaintiff's name thereto, and acknowledging them before a notary public in the name of plaintiff. Some time before September 9, 1931, pursuant to the arrangement between C. D. Ham and J. H. Atwood, said C. D. Ham sent the mortgage and notes, release of mortgage, and deed to the Lea County State Bank at Lovington, N. M., together with a letter to which he signed plaintiff's name without his knowledge, authority, or consent, which letter reads as follows:

"Lea County State Bank,

"Dear Sirs:

"Deliver the inclosed notes and satisfaction of mortgage to Mr. Patten upon delivery to you for me a $1000.00 Bank Stock, drafts and notes and mortgage from Will N. Terry in amounts as per stipulation for settlement between the lawyers and clients covering $500.00.

"Yours truly,

"Jeff M. Ham

"to be sent to C. D. Ham,

"501 West 17th.,

"Roswell, N. M."

The defendant had been trying to buy the land in question and had a number of conversations with Atwood. When Atwood advised that a deal could be made the defendant employed W. H. Patten, an attorney, to represent him, and to see that he got good title. As a requisite in connection with the title, Attorney Patten required that this action to foreclose the mortgage, which was then pending, and another action which was also pending, should be dismissed. Atwood obtained orders of dismissal, and after the papers had been received by the bank, together with the letter of instructions, Atwood met with the defendant, Patten, who represented the defendant, and with Melvin Neal, an attorney, who represented Doll Ellis, with regard to the transaction. At

that time the defendant executed an assignment of eight shares of the capital stock of the Lea County State Bank, of the par value of $800, a note for $1,800 to Jeff M. Ham, and a mortgage covering the real estate to secure the payment of the note, and also executed a note for .$1,000 to Doll Ellis and made out a check for $500. Attorneys Neal and Patten went to the bank and delivered the bank stock and assignment, and the $1,800 note and mortgage to the bank, and received the original notes and mortgage, the release, and deed. The original notes and mortgage were delivered to Attorney Neal as representative of Doll Ellis, and were destroyed. Attorney Neal also received the $1,000 note executed by defendant, on behalf of Doll Ellis, and received $250 of the $500 paid by defendant, which was retained. The release of mortgage and deed to defendant were placed of record, and also a deed from Doll Ellis to the defendant. The bank forwarded the bank stock and $1,800 note and mortgage as directed in the letter to them, and immediately it was returned by plaintiff, who refused to accept it.

A value of $1,000 was placed on the bank stock by the defendant, who stated he had paid that amount for it, and that it was included in the deal for that amount. However, within a few months after the assignment of the stock the Lea County State Bank closed, and a 100 per cent. assessment was placed against all stock. Suit was brought against the plaintiff to collect the assessment and judgment

was rendered by default against him, and the $1,800 note and mortgage levied upon and sold to satisfy the judgment. This note and mortgage remain unpaid in the hands of the purchaser at the sale. The $1,000 note to Doll Ellis was subsequently paid by the defendant.

The court set aside the orders of dismissal procured as hereinbefore set out and, upon trial of the cause, entered judgment against the defendant Doll Ellis for four-ninths of the amount due on the notes, and decreed that the mortgage should be foreclosed as to the 640 acres originally owned by plaintiff, and ordered that the release appearing of record be canceled in so far as it affected the 640 acres, and that the notes and mortgage be reinstated as to the four-ninths part and the 640 acres, and quieted title in the defendant as to the 800 acres of land originally owned by C. D. Ham.

The defendant Will Terry was granted an appeal to this court. The major portion of his brief is directed toward sustaining the lower court's decree quieting title to the 800 acres in him. Although objections were made to findings of fact made by the court, none of these findings are attacked by him in this court, and accordingly, so far as his appeal is concerned, they stand as the facts of the case.

Three propositions of law are argued by defendant Terry, on his appeal, as follows:

(1) C. D. Ham, having possession of the notes and mortgage, had the right to release them.

(2) C. D. Ham, being the joint owner of a common debt, had the right to release the same.

(3) Will Terry, having bought the property when the record was clear, subsequent changes in the record could not affect the title acquired.

As to the first point, it is clear that mere possession of a mortgage does not give the right to release. The mortgage in the instant case stood in the name of Jeff M. Ham. C. D. Ham did not attempt a release as the owner and holder of the mortgage, but signed the name of Jeff M. Ham.

"The person shown by the record to be entitled to receive payment is in general the proper party to enter satisfaction of the mortgage upon the record, in the absence of a countervailing express provision of the statute, as, for example, the mortgagee where no assignment appears of record, or the last assignee of record, or the attorney in fact of the person entitled to enter satisfaction, or a duly accredited agent, although his authority does not take the form of a power of attorney." 41 C.J. 812.

In this case it cannot be contended that C. D. Ham released the mortgage as the "duly accredited agent," since it purports to be a release by the mortgagee himself, and also in view of the fact that the lower court specifically found that he was not such an agent of Jeff M. Ham.

The authorities cited in support of the second point are all to the effect that one of two joint mortgagees may receive payment and discharge the mortgage. This is not such a mortgage, and the rule contended for does not go so far as to permit one who has an equitable interest in a mortgage, upon receiving payment, to forge the name of the legal owner thereto, so as to give an effective release, at least of anything more than the interest of the one so acting.

As to point 3 made by defendant Terry, on this appeal, suffice it to say that the court below found the title of Terry to be based on a forgery, and on a release void for fraud and as a forgery. This being true, even though the point were well taken, and this we doubt, it could avail him nothing, since his title was otherwise fatally defective.

Having disposed of the contention made by the defendant Will Terry, we pass to the arguments on appeal of plaintiff, Jeff M. Ham, and defendant C. D. Ham. A joint brief has been filed on their behalf, and all issues are discussed jointly.

The first two "Points Relied on for Reversal" are as follows:

"1. The Court erred in holding and deciding that the defendant, Will Terry, acquired any interest whatever in the notes and mortgage described in plaintiff's complaint, or any interest in the lands in controversy herein, because of the escrow instructions sent to the Lea County State Bank were not complied with, and were violated by the Lea County State Bank and by the

defendants, Terry and Ellis, who obtained the said notes, mortgage, deed and release of mortgage illegally and fraudulently.

"2. The Court erred in not holding and deciding that the defendant, Will Terry, was a party to the fraudulent scheme to deprive the plaintiff of his property, and on account thereof, said defendant could not acquire any rights to said notes and mortgage, or to the real estate described in said mortgage."

As will be noted, it is urged that the court erred in not holding and deciding that the defendant Will Terry was a party to the fraudulent scheme to defraud the plaintiff of his property, and because of his fraudulent acts could not acquire any rights in a court of equity. The plaintiff duly excepted to the findings of the court and to the refusal of the court to find that the defendant Will Terry was a party to the fraud. The plaintiff below requested the following finding of fact: "That said purported settlement was fraudulent, unauthorized, and wholly void and the defendants, Will Terry and Doll Ellis are chargeable with knowledge of said fraudulent transactions."

The court refused the finding requested and substituted therefor another in which it is set forth that Will Terry knew that C. D. Ham was asking $6,000 for the release of the notes and mortgage, and that his attorney knew that there was small basis for the claim interposed in the form of a cross-complaint by defendant Ellis. However, the court did not find any fraud on the part of Terry and specifically found that "the de-fendant Terry, turned over to the Lea County State Bank all of the consideration which he agreed to pay for the premises involved in this action." Also, the court found that the deed from Jeff M. Ham to Will Terry, as well as the release of mortgage by Jeff M. Ham and the letter of instructions to the bank, were forgeries, and that C. D. Ham was the person guilty of executing the forgeries.

From all the facts disclosed by this record, it is quite clear that a serious fraud has been perpetrated.

That J. H. Atwood was the moving light in all of this fraudulent transaction cannot be doubted. That the evidence discloses additional peculiar circumstances which under certain conditions might be taken to implicate the defendant Terry in the fraud likewise cannot be denied. However, it appears affirmatively that the defendant Terry has paid or obligated himself to pay in connection with the transaction something over $4,000. There is no evidence of any agreement between Terry and C. D. Ham to pay $6,000 although it is clear from the record and the court found that Terry knew that C. D. Ham was asking $6,000 for a release of the notes and mortgage. It does not appear from the record that the defendant Ellis had any valuable interest in the property, and yet it appears from the uncontradicted testimony that she received $1,000 and her attorney $250 out of the purchase price paid by Terry. Upon what basis this was paid or for what reason is not satisfactorily explained. C. D. Ham, who made

the arrangements for the sale with J. H. Atwood, testified that he had never agreed to accept bank stock. However the words "Bank Stock" appear clearly in the letter of instructions. C. D. Ham, when testifying, stated in effect: That J. H. Atwood prepared the letter and when he read it over to the witness, C. D. Ham, objection was made by him to these words and the failure to include the word "drafts," that thereupon Atwood made certain changes in the letter which he assumed included striking out the words "Bank Stock."

However, from a reading of the letter, it is apparent, taking the evidence of C. D. Ham as true, that Atwood did not remove the words "Bank Stock," and merely added the word "drafts." From the fact that Atwood presented to C. D. Ham a letter containing the words "Bank Stock," it is reasonable to conclude from all the facts that Atwood had represented the deal in one way to C. D. Ham, and in another way to the defendant Will Terry. And, although the findings of fact made by the court do not clearly indicate this conclusion, we are of the opinion that such conclusion lies within the findings made, particularly in view of the finding quoted above and the refusal of the court to find participation in the fraud by the defendant Terry.

The plaintiff and his father are both ignorant men, and it would seem from all the facts that they were ideal subjects for all the fraudulent schemes of Atwood.

We have a situation confronting us in which the defendant Terry has parted with a certain amount of consideration, while, on the other hand, the Hams have lost a note secured by a mortgage on real estate of the original value of $7,350, and in return therefor have received nothing except a note in the amount of $1,800, secured by a mortgage, and bank stock of the face value of $800, which within a few months after the transfer became a liability in that amount. That such a situation would give rise to a question concerning the bona fide nature of the transaction cannot be doubted, but the trial court had an opportunity to view the various witnesses on the stand, and to judge concerning the weight of their evidence, and, having found the defendant Terry free from fraud, this court will not reverse the lower court unless there is no evidence upon which the court could have based its finding. This, we are not prepared to say.

Be this as it may, appellant urges in point 1, quoted above, that the defendant Will Terry could not acquire any interest because he obtained the documents in question, and upon which he bases his claim from an escrow agent without complying with the terms of the escrow.

The lower court refused to find that the bank was an escrow agent, or that the letter of instructions hereinbefore set out was an escrow agreement, insisting that it be denominated a "letter of instructions."

The defendant Will Terry, in his brief, states: "The first point relied on by the appellant fails to recognize the fact that the Lea County State Bank was made the agent

of the plaintiff and he designated the Bank as his agent to deliver the papers according to instructions. * * *" That such was the situation we do not think can be doubted.

In 21 C.J. 866, the nature and requisites of an escrow are set forth as follows: "In order that an instrument may operate as an escrow, not only must there be sufficient parties, a proper subject matter, and a consideration, but the parties must actually contract, and the deposit of the instrument in pursuance of such contract must be absolute and beyond the control of the depositor. Otherwise the instrument so deposited can be withdrawn by the depositor."

 In the instant case, it is apparent that no contract between the plaintiff, Jeff M. Ham, or C. D. Ham, acting for him, had been entered into with the defendant Will Terry. Also, it is apparent that the depositing of the instruments in the bank did not put them out of the control of the depositor in such a way that Jeff M. Ham or C. D. Ham could not have recalled them at any time. McLain v. Healy, 98 Wash. 489, 168 P. 1, L.R.A.1918A, 1161; Davis v. Brigham, 56 Or. 41, 107 P. 961, Ann.Cas.1912B, 1340; Thomas v. Birch, 178 Cal. 483, 173 P. 1102.

Having concluded that the Lea County State Bank was not an escrow agent, but rather was the agent of C. D. Ham, does it follow as is contended by the defendant Will Terry that "if there was any injury sustained by the Bank not carrying out his (Ham's) instructions, that is a question for the plaintiff, and the Lea County State Bank."

The writing creating the agency has already been quoted. The trial court found that the notes, mortgage, release of mortgage, and deed were obtained from the bank without complying with its terms, and also found that under its terms Will Terry was not authorized to pay $1,000 to the defendant Ellis and charge the same to the plaintiff or C. D. Ham, nor was he authorized to pay $250 to Attorney Neal, or $250 to Attorney Atwood, nor to pay the taxes on the property, and charge the same to the plaintiff, or C. D. Ham. At the same time the court found that C. D. Ham intended and instructed J. H. Atwood that he would accept $1,000 cash and a $5,000 note, but that the letter of instructions was vague, indefinite, and uncertain.

 The agency of the Lea County State Bank must be based upon and is limited by the "letter of instructions." The defendant Terry, through his attorney who testified that he examined the letter, knew of its contents. In volume 1, p. 400, § 164, of the Restatement of the Law of Agency, the rule is stated as follows:

"If an agent having the power to bind a disclosed or partially disclosed principal by certain terms in a contract, makes a contract including such terms and also other terms which are beyond the power which he has to bind the principal, the principal is not liable either upon the contract made, or the contract with the additional terms omitted. * * *"

"1. P authorizes A to sell Blackacre for $5000.00 cash. A contracts to sell Blackacre to T, who knows the terms of the authorization, for $1000.00 cash, and $4000.00 in deferred payments. Although T is willing to pay $5000.00 cash, P is not liable on the purported contract."

In 2 C.J.S., Agency, p. 1192, it is stated that, where an agent is dealing under written authority and the third person with whom he is dealing has notice or knowledge of the writing, "he is chargeable with notice of its contents and is held bound to know the extent of the agent's authority. The law regards him as dealing with the power before him and requires him at his peril to see to it that the transaction is one that comes within the authority conferred upon the agent."

The rule is also stated as follows: "The authority of the special agent being in its nature limited, suggesting restrictions and qualifications which may be discovered upon investigation, its scope is much more easy of determination and must not be exceeded, or, as the rule is ordinarily stated, his authority must be strictly pursued, and, if it is not, the principal will not be bound. A person dealing with a special agent, it is constantly said, 'acts at his own peril,' he is 'put upon inquiry,' he is 'chargeable with notice of the extent of his authority,' 'it is his duty to ascertain,' 'he is bound to inquire,' and 'if he does not he must suffer the consequences.' Dowden v. Cryder, 55 N.J.L. 329, 26 A. 941; National Bank of Kentucky v. Reeder, 253 F. 722-724, 165 C.

C.A. 316; 1 Mechem on Agency (2d Ed.) 742." Fidelity Trust Co. v. Fowler (Tex. Civ.App.) 217 S.W. 953, 955.

Also, in the case of Fidelity Trust Co. v. Fowler (Tex.Civ.App.) 217 S.W. 953, it is further stated: "And further the rule is announced that parties dealing with such an agent must see to it that his authority is adequate, and both they and the agent must keep strictly within the limits fixed to the agent's authority, or the principal will not be bound; that authority to bind the principal for a given sum will not authorize binding him for a greater sum."

The rule has been stated in so many cases all to the same effect that it would be superfluous to extend the citation of authorities.

"The following are legal platitudes: As to third persons a principal is bound by the acts of his agent, not only when executed in pursuance of actual authority, but also within the scope of his apparent authority arising from the manner in which his principal has held him out to the public. *Apparent authority and its effect vanish, however, in the presence of the actual knowledge of the third party as to the real scope of the agent's authority, or when the former has knowledge of facts which would put him upon inquiry as to the* actual warrant of the agent." (Italics ours.) City of Portland v. American Surety Co., 79 Or. 38, 153 P. 786, 787, 154 P. 121.

In the light of the authorities, it is clear that the letter to the bank as agent of the Hams, being a special agent with

only the authority given it in the letter of instructions, the defendant Terry, in dealing with it, did so at his peril, and, if the agent exceeded its authority or varied therefrom, the principal was not bound thereby, and can avoid the transaction there made. This is true unless, because of the ambiguities and uncertainties contained in the letter creating the agency, or because of their own negligence, they have misled a third party, or permitted their agent to perpetrate a fraud, in which event the rule would be otherwise.

That the instant case does not come within the exception noted is equally clear. In 2 C.J.S., Agency, p. 1226, the rule is stated as follows: "While a written instrument proposing to establish an agency may, of course, be so vague and incapable of sustaining any reasonably certain and definite construction as to be ineffective to establish any agency, if the writing although not so extremely uncertain and conjectural as to be altogether incapable of operation, is still of doubtful import on account of ambiguous language used by the principal, the ambiguity will be construed in the light of the circumstances and of the object to be accomplished, and, under the general doctrine that the words of an instrument are to be taken most strongly against the person using them, any doubt will be resolved against the principal who framed, gave, and executed the power, and in favor of third persons dealing with the agent, or of the agent, where the contest is between himself and the principal and the latter is responsible for the language of the instrument, unless the contract be annulled or other paramount rules of construction would be ignored by adopting such a construction. *The test as to whether it includes the power to act in the manner in which the agent undertook to deal is not how it was understood by the principal, but whether, upon its being read by the third person, he could reasonably have assumed it to extend to authorize the act undertaken; and, if it is susceptible of such a construction, that is the one to be given it.*"

Applying the test as set forth in the quotation above, can it be said that Terry could reasonably interpret the letter creating the agency in the instant case to permit him to do the things, and pay the money in the manner that was followed? The trial court found that these actions on the part of Terry were not authorized under the instructions, evidently thereby intending to construe the meaning of the letter, while at the same time finding it to be indefinite, uncertain, and ambiguous. The court found further that C. D. Ham intended and that the figures "$500.000" were meant to be $5000, and that C. D. Ham thought that he was to receive a note in the amount of $5,000 secured by a mortgage and the balance of $1,000 in cash. Although, in the light of the court's finding that Terry had paid all of the consideration which he had agreed to pay, and in the light of the refusal of the court to find that Terry was guilty of fraud, we are

not willing to hold that nevertheless the transaction should be abrogated because of fraud on the part of Terry, neither are we willing to hold that Terry, or his attorney, placed a reasonable interpretation upon the indefinite and ambiguous language of the letter, in the light of the circumstances of the instant case, and the findings made by the court. Having proceeded to act upon the letter with all of its ambiguities and uncertainties, Terry cannot be held to gain an advantage over those who have been deprived of their property for little or no consideration.

"Furthermore, the third person is bound to construe the terms of the written authority at his peril as well as to know them, but it is the rule that the writing constitutes apparent authority for the agent to act in any manner or matter coming within the operation of its provisions properly construed and as such, it absolves the person dealing with the agent from further inquiry as to limitations upon the agent's powers not expressed therein in the absence of facts and circumstances indicating that such apparent authority is not the true authority and thus suggesting the need of further investigation." 2 C. J. S. Agency, page 1192.

In the instant case, assuming that the attorney for Terry advised the agent, Lea County State Bank, of his understanding of the letter of instructions based upon the negotiations which had previously gone forward between the defendant Terry on the one hand and Atwood, acting for the defendant C. D. Ham, on the other hand, we cannot lose sight of the fact that Terry and his attorney both knew that C. D. Ham had refused to intrust the papers to Atwood and had sent them to the bank with his instructions. It is absolutely impossible for us to read into this letter any authority to handle the transaction in the manner in which it was done, or to pay the amounts that Terry testified he had paid. This is true even though reference is made in the letter to a "stipulation for settlement between the lawyers and clients," which stipulation the court found was never made. To say the least, Terry should not have acted without further investigation, and having proceeded to part with his money on what he construed the letter to mean, evidently relying more upon the representations of Atwood than upon the letter itself, it is our view that he proceeded at his peril and, having misconstrued the authority of the agent, must suffer the loss.

█ A principal is not bound by the acts of his special agent in excess of the authority granted. This is true even though the extent of the agency was indefinite and uncertain, when the third party dealing with the agent had an opportunity to examine the instrument creating the agency, and proceeded without further investigation. In the instant case any reasonable man, upon examination of the letter in question, must certainly

have recognized the ambiguities and questions inherent therein, and good judgment would have dictated further investigation to determine the meaning and limits placed upon the authority of the agent. Having acted without further inquiry or investigation, the loss must fall upon him. City of Portland v. American Surety Co., supra; Restatement of Law of Agency, vol. 1, p. 408, § 167; Gates et al. v. Flanagin, 182 Ark. 529, 31 S.W.2d 945; Robinson v. American Fish & Oyster Co., 17 Cal. App. 212, 119 P. 388; Mechem on Agency, vol. 2, p. 1690, § 2117 (2d Ed); Thompson v. Equitable Life Assurance Society, 199 N. C. 59, 154 S.E. 21, 85 A.L.R. 739; Phez Co. v. Salem Fruit Union, 113 Or. 398, 233 P. 547.

The lower court evidently based its conclusion on theories of equitable estoppel, having found "that the defendant, C. D. Ham, on account of his conduct and actions in the premises * * * is estopped from having or claiming any interest in or to said tract of land. * * *" The learned trial court, by its reference to the acts and conduct of the defendant C. D. Ham, must have had in mind his negligence in executing and forwarding the ambiguous and indefinite letter hereinbefore quoted. That under certain circumstances actions on the part of a person in cloaking an agent with apparent authority to represent the person in a certain manner may give rise to proper case for the application of the doctrines of estoppel cannot be doubted. 2 Am.Jur. 86, § 104.

However, it is our view that under the facts of the instant case, the defendant Terry himself was negligent and did not exercise the reasonable care which a person in his position was required to do, when confronted with the authority of the agent and fully aware of its uncertainties and ambiguities, not to mention its failure to in any way provide for or refer to a transaction such as was attempted to be consummated here. This being true, the doctrines of estoppel cannot be invoked against the defendant C. D. Ham, and for the protection of the defendant Will Terry, who himself was at fault in acting without any attempt on his part to determine what authority the principal intended to give his agent. In the case of Smith et al. v. New York Life Insurance Co., 26 N.M. 408, 193 P. 67, 70, this court, speaking through Mr. Justice Roberts, said, "the principal is responsible for the unauthorized acts of the agent, where the conduct of the principal justifies a party dealing with the agent in believing that such agent was acting within, and not in excess of the authority conferred upon him."

In that case we held that the actions of the agent would have been in excess of his authority and that the third person dealing with him knew or had reason to know that such actions were without

authority, and consequently that the principal was not bound.

In the instant case, where the third person (Terry) through his attorney, Patten, had an opportunity to examine the authority of the agent and, in the face of apparent uncertainties and ambiguities concerning the same, nevertheless proceeded to place his own interpretation thereon, and to act without further investigation, we hold that he did so at his own risk, and in this action cannot be held to have acted reasonably or in a prudent manner so as to estop the principal to deny the authority of the agent.

In view of our conclusion on the point just discussed, it becomes unnecessary for us to pass upon the other questions raised by the appellant.

The judgment of the lower court will be reversed in so far as it quieted the title in the defendant Terry, in and to the 800 acres previously owned by C. D. Ham, and deeded by him to Doll Turland Ellis, and the cause will be remanded to the district court, with instructions to enter judgment for the plaintiff, setting aside the deed from Jeff M. Ham to Will Terry, and reinstating the mortgage and foreclosing the same, and it is so ordered.

HUDSPETH, C. J., and SADLER and ZINN, JJ., concur.

BICKLEY and BRICE, JJ., did not participate.