## THOMAS v. PRUDENTIAL INS. CO. OF AMERICA.
### No. 4440.

Circuit Court of Appeals, Fourth Circuit.
June 12, 1939.

Before NORTHCOTT and SOPER, Circuit Judges, and WAY, District Judge.

Kemp D. Battle, of Rocky Mount, N. C. (W. L. Thorp, I. D. Thorp, Thorp & Thorp, Francis E. Winslow, and Battle & Winslow, all of Rocky Mount, N. C., on the brief), for appellant.

J. L. Emanuel of Raleigh, N. C. (James H. Pou, Jr., and Pou & Emanuel, all of Raleigh, N. C., on the brief), for appellee.

SOPER, Circuit Judge.

The policy of life insurance in suit in this case was held by the District Court to have expired prior to the death of the insured by reason of his failure to pay the premium in accordance with the contract, and we are called on to decide whether this decision was correct in view of the receipt of the insured's check by the Insurance Company before the expiration of the grace period and in view of the subsequent circumstances now to be set out, which the testimony of the plaintiff tends to show.

On March 4, 1936, the company issued its policy of life insurance upon the life of Thomas Thomas for the sum of $5,000, payable at death to his wife, who was the plaintiff in this action. The policy provided for the payment of the annual premium of $218.45 on the 4th day of March, and provided a grace period of 31 days. The payment of the initial premium kept the policy alive to April 5, 1937. As that day approached, the insured found himself unable to pay the second annual premium, and therefore made application on April 3 to W. E. Batts, the company's local agent at Rocky Mount, North Carolina, for a change in the mode of payment of premium from an annual to a monthly basis; and accompanied his application with his policy and a check for $19.30, the amount of the monthly premium, drawn upon the Wolfeboro National Bank of Wolfeboro, New Hampshire, where he had an account. Batts sent the

policy, application and check to J. E. Sebrell, the company's manager in North Carolina in the territory east and north of Charlotte, where they were received on Monday, April 5. Sebrell deposited the check in a Charlotte bank to the credit of the company and sent the policy and application for change in the method of payment to the home office of the company at Newark, New Jersey. On April 7 the application was granted and the change was endorsed on the policy which was then returned to Sebrell.

The insured died suddenly on April 8, 1937, from coronary embolism. On April 9, 1937 the check reached the New Hampshire bank in due course, and at the close of business on that day was dishonored on account of insufficient funds. As a matter of fact there was only $4.70 to the credit of the account from and after April 1, 1937, and hence this was the condition of the account when the check was drawn and tendered in payment of the monthly premium.

On the morning of the same day that the check reached the New Hampshire bank, M. R. Robbins, acting on behalf of the beneficiary of the policy, called on Batts at his office in Rocky Mount and informed him of the death of the insured. Robbins was also an insurance agent and was anxious to know whether the policy was in force. He testified that he told Batts that he was authorized to act for Mrs. Thomas, and wanted to send his check to protect the premium in the event that the insured's check should come back, and if necessary, he would telegraph funds to the New Hampshire Bank to cover the insured's check. In Robbins' presence Batts called Sebrell by telephone and the latter said that in his opinion the policy would be in force even if the Thomas check was returned unpaid, and that it was not necessary for a new check to be sent, for the amount of the check, if dishonored, would be deducted from the death claim. On account of this conversation Robbins refrained from telegraphing funds to New Hampshire, but did give his own check to Batts for the amount of the premium and Batts forwarded it to Sebrell to hold in the event that the insured's check should prove to be no good. Sebrell received the check but returned it to Batts, saying that it was not necessary, but that if the Thomas check came back, he would notify Batts and Batts could then return the Robbins check. On April 14, the Thomas check having been returned unpaid, Sebrell notified Batts who returned Robbins' check. On the same day,

Sebrell made good the Thomas check in the company's account and was reimbursed by the Robbins' check when it was received.

On July 2, 1937, Sebrell, acting upon instructions from the company, sent Robbins a check for the amount previously received from him, stating that it was the company's view that the policy had lapsed at the time of Thomas' death, and that the company would not accept the Robbins' check in place of the Thomas check in payment of the premium.

The insurance policy contained the following provision: "No agent has power on behalf of the company to make or modify this or any other contract of insurance, to extend the time for paying a premium, to waive any forfeiture, or to bind the company by making any promise, or by making or receiving any representation or information."

The contract between the company and Sebrell contained the following provision: "Section 7. That the Manager has no authority on behalf of the company to make, alter or discharge any policy, to extend the time for paying a premium, to waive forfeitures, to incur any liability on behalf of the company, to allow the delivery of any policy unless the applicant be in good health and the first premium paid in full."

Upon these facts the District Judge directed a verdict for the defendant.

Under the general rule prevailing in North Carolina, the payment of a debt by check is conditional only, the presumption being, in the absence of an agreement to the contrary, that the check is accepted on the condition that it shall be paid, and the debt is not discharged until the check is paid. Hayworth v. Insurance Co., 190 N. C. 757, 130 S.E. 612; Philadelphia Life Insurance Co. v. Hayworth, 4 Cir., 296 F. 339; South v. Sisk, 205 N.C. 655, 172 S.E. 193. It follows that the mere acceptance of the check by the company in this case did not constitute payment since the insured had no funds in the bank to meet it.

But we must nevertheless consider whether the acts of Sebrell, the company's manager, constituted an extension of time for the payment of premium and a waiver in this respect of the terms of the policy notwithstanding the provisions of the policy and of the agent's contract purporting to deny to him any authority or power in this respect. We have seen that according to the testimony of Robbins, on behalf of the plaintiff, Sebrell said that it would be un-

necessary for Robbins to telegraph funds to New Hampshire to make good the promised check, or in lieu thereof, to send another check to the company, and also that Sebrell sent back Robbins' check when first received, and later when the Thomas check was returned, made it good in the company's bank account and accepted Robbins' check in reimbursement. Thus Sebrell not only acted in such a way as to dissuade the representative of the beneficiary from making the insured's check good in New Hampshire, but in effect extended the time for the payment of the premium. This was an act that the agent was expressly forbidden to perform, and if there were nothing more, such an act would have no effect on the life of the policy, for the insured was bound by the limitations imposed by the contract upon the authority of the agent. Thompson v. Assurance Society, 199 N.C. 59, 154 S.E. 21, 85 A.L.R. 739; see Turlington v. Insurance Co., 193 N.C. 481, 137 S.E. 422; Mills v. Insurance Co., 209 N.C. 296, 183 S.E. 289.

█ But the terms of the contract may not tell the whole story, for as the Supreme Court of North Carolina said in Hill v. Insurance Co., 200 N.C. 115, 122, 156 S.E. 518, 522: "The authority of agents of life insurance companies, so far as the public with whom they deal is concerned, is controlled not so much by the terms of their employment or by the terms of the policies, which they procure, as by the things which the principal permits them to do by the nature and extent of the business for which they are employed and permitted to carry on."

█ Sebrell's testimony as to the methods which he pursued in carrying on the business of the company may be summarized as follows: He collected several hundred thousand dollars in premium payments each year. Most of such payments were made by check. All of such checks were deposited to the account of the Company in a Charlotte bank. Any check paid to an agent within the grace period was accepted; hence the Thomas check was regarded as a premium paid on April 3. If a check paid at the end of a grace period and deposited to the account of the Company was dishonored, the policy holder was allowed a reasonable length of time to make it good before his policy was cancelled. Sebrell would either reimburse the Company when a check proved bad, and attempt to collect it from the policy holder, or would notify the Company and take credit. In the present case, he immediately made good the Company's loss when the Thomas check proved bad, and relied on Batts to reimburse him by means of Robbins' check. Sebrell's testimony indeed indicates that he was in the habit of accepting payment after the due date when a check proved bad. He stated to Batts during the telephone conversation of April 9 that Thomas had paid the premium in time, and that if the Thomas check proved bad, the policy would be kept in force long enough for another remittance to be sent to replace it. [1]

There was no direct evidence that the company authorized such activities of its agent, except such knowledge as may be inferred from the fact that he had so acted for a number of years. But we think that this testimony constituted some evidence, although by no means conclusive, that by knowledge and acquiescence, the company had conferred actual authority upon its agent to waive the provisions of the policy with respect to the extension of credit for the payment of premiums. It was therefore a question for the jury to decide under proper instructions from the court, as was held by this court in a somewhat similar situation in Hill v. Philadelphia Life Insurance Co., 4 Cir., 35 F.2d 132, which, on a retrial of the same controversy in the North Carolina courts, received the approval of the Supreme Court of that State. See Hill v. Insurance Co., 200 N.C. 115, 156 S.E. 518.

█ We have also considered the other grounds urged by the plaintiff to show that the policy was not forfeited. It is said that the company was estopped from denying liability on the policy by the conduct of Sebrell whereby the representative of the beneficiary was deterred from making good the insured's check drawn on the New

---

[1] Payment of insurance premiums by check is well nigh universal practice, and if a check is customarily accepted by the company as payment when received on the due date of the premium, although it cannot be presented in due course to the bank on which it is drawn until a later date, the practice amounts in effect to an extension of credit. In Kendrick v. Insurance Co., 124 N.C. 315, 32 S. E. 728, 70 Am.St.Rep. 592, it was held that a check mailed a few hours before the insured died constituted payment of premium during his lifetime. See, also, Whitley v. Insurance Co., 71 N.C. 480; Taylor v. Merchants' Fire Ins. Co., 9 How. 390, 13 L.Ed. 187.

Hampshire bank. In our opinion, no estoppel arose from this action. The beneficiary was bound to take notice of the limitation upon the agent's authority, and the evidence in this respect has a bearing on the controversy only so far as it may tend to show a practice on the part of the agent of extending credit for the payment of premiums with the knowledge and consent of the company.

It is also said that the length of time which elapsed between the notice to the company of the dishonor of the insured's check on April 9 and the repudiation by the company of liability on July 2, was evidence from which waiver of the forfeiture of the policy by the company could be inferred. We think there is no substance in this point. The company was entitled to a reasonable time to investigate, and it cannot be said that the time which elapsed in this instance was more than was reasonable under the circumstances. However, for the reasons above stated, the judgment of the District Court must be reversed and the case submitted to the jury for a new trial in accordance with this opinion.

Reversed and remanded.