Nash, J.
 

 We think his Honor erred, and that the injunction ought to have been dissolved in full.
 

 The plaintiffs, by their bill, rest their claim to relief upon three grounds: First, that the defendant, when he made his purchase,was their agent, and in this Court will be held to be a trustee for their benefit. 2d, that the judg-_ ment was fraudulently obtained, no process having been ever served upon the President of the company or any Stock-holder, and no defence having been made for them. And, 3dly, that the defendant was guilty of a fraud in purchasing from them the ore as set forth in the bill, in-representing to them that it was not worth more than $600, when he knew that it was worth a great deal more, and when in fact he realized from it and other ore, six thousand dollars, whereby their debt to him was more than paid.
 

 It is a well established principle in Equity, that an agent cannot make himself an adverse party to his prin
 
 *70
 
 eipal, while the agency continues ; he can neither make himself a purchaser when employed to sell, nor, if employed to purchase, can he make himself the seller, and to this rule the exceptions are very limited. The justice and expediency of the rule are obvious and founded upon a plain reason. The principal does not get what he bar- . gains for, in the employment, namely, the zeal and vigi ilance of the agent, for his own exclusive use.
 
 Patcy on Prin. and Agent,
 
 p. 11, 33, 34. Equity therefore will consider an agent so acting as a trustee, in the case of a purchase, for his principal, and the purchase itself, but as a security for what may be found due him on a settlement of accounts between him and his principal. ^This case is not within the above principle. But the rule applies only to agents, who are relied upon for counsel 'and direction, and whose employment is rather a trust than a service, and not to those who are merely employed as instruments, in the performance of some appointed service.
 
 Pal. on Prin. and Ag.
 
 12. If then the original employment of Fox, the defendant, was such an agency as forbad him to place himself, with respect to this property, in a position adverse to his principals, the plaintiffs, it is evident from the statement of the bill, that such agency had ceased before the commencement of his action against them. The bill charges, that the plaintiffs, through their President, on or about the sixth day of April, 1839, addressed a letter to the defendant, notifying him that his services were no longer required and directing him to forward his accounts. From the reception of that letter, the defendant ceased to he their agent, as an officer in conducting their mining operations.
 

 The .suit, which Fox instituted against the corporation, was commenced in the summer of 1841. It is true, that, after he was thus dismissed from their service, he entered into a new agreement to take care of the land and other property for the use of the land and $100 a year. But \ve do not think, that, by this new agreement or agency.
 
 *71
 
 he stood in such a relation to the plaintiffs, as to forbid his resort to the ordinary process of the law, to enforce the collection of a debt, which was justly due him.
 

 The second ground upon which the defendant’s purchase is assailed, is equally untenable. The bill charges, that the process was not served on the President or on any Director ¡ and that judgment was taken against them by default, and without any defence. The act of incorporation, as set forth in the bill, subjects all the property of the company to the payment of their debts, and authorizes service to be made on the President, or in his absence, on a Director, or in the absence of both, on a Stock-holder — a provision usual in such acts, and, in this case, peculiarly proper, as all the officers and Stock-holders. but' one, resided out of the State. In May, 1839, the defendant, in compliance with the directions contained in the letter from the President, and dated in the April preceding, met the board of Directors in Philadelphia; where, as he stated in his answer, he presented a general statement of the affairs of the company, and his own account, and demanded payment of the latter, and that no objection was made to his claim as not being correct, but he was told the company had no funds. At this meeting, the agreement was made as to taking care of the mines and other 'property. He received $100 and the promise of $800 more in two or three weeks, which was never sent. Again, in May, 1841, he met the board in the city of New York, and urged the payment of his account. No complaint was then made as to its correctness, and he informed them, that, if not paid by the next Court in Guilford county, he would sue them; and, no payment being made, the suit was commenced, returnable to August Court. The writ was served on Roswell King, who was both a Director and a Stock-holder, and, at the return term, the usual pleas were entered on the record by an attorney of the Court. And yet Mr. Patterson, the President, and one of the plaintiffs, swears that it was not
 
 *72
 
 served on any Director of the company. The suit, then, was regularly commenced, and, as stated in the answer, regularly conducted to a judgment. We see nothing unfair in all this. Ibis claim against the company was admitted to be just; he had been informed by the President and some of the Directors at the North, that the company was without funds, and had been' informed by Mr. King, himself a Director, and a Stock-holder and creditor of the company, that the individuals composing it were all bankrupt. • There was no property to which he could look for his indemnity, but the lands and the property of a personal character connected with the mines. What was he to do ? Did the law require him to stand by and see other creditors seize this very property, upon which his labor had been bestowed, and make no effort to save himself. We think not. But the defendant goes further. No sooner is his judgment obtained, than he informs the board of Directors of the fact — informs them when the sale will take place, and assures them, unless paid, the land will be sold. The lands were sold publicly, at the Court-house in Guilford County, on the sale day, as established by law, being the first day of the Court, and do not bring, by $200, what the executions called for. Mr. Fox again went on to New York — took with him the Sheriff’s deeds, without having had them registered, and offered to surrender the deeds and give up all the property, if they would pay him what was justly due, and his travelling expenses. This proposition on the part of the defendant, is evidence that he had no wish to speculate on his late employers. It will be recollected the cáse is before us, not for hearing, but upon a motion to dissolve the injunction. In confirmation, however, of the statement made by the answer, is the letter of the 30th of May, 1842, written to the defendant by the President, G. S. Patterson, and Henry Ogden, one of the Directors of the company, in answer to one written to them by the defendant, informing them
 
 *73
 
 of the sale, in which they state that the company would not pay him his claims, and that, in purchasing the property at the Sheriff’s sale, no blame could attach to him. With what propriety, then, can these plaintiffs allege, that the recovery by the defendant was a fraudulent one ? As to the irregularity in the recovery, as alleged, but which is shown not to exist, this Court can take no notice of it, except so far as it may be evidence, with other things, of a fraud. Here, it is not alleged, upon this part of the case, that the plaintiff has recovered that by law, which in good conscience he ought not to retain; nor do the pleadings show, that although the judgment was recovered for a true debt, yet it was iniquitously used, in which case the Court would not hesitate to deprive the purchaser of the fruits of his iniquitous conduct, as was done in the case of
 
 Lord Cranston
 
 vs.
 
 Johnston,
 
 3 Ves. Jr. 170, and cited for the plaintiff. Here the plaintiffs, or a part of them, not only admit, in their letter of the 30th May, that the defendant’s claim was a just one, but that he had made a just and proper use of his judgment by purchasing at the sale.
 
 Bissell
 
 v.
 
 Bozman, 2
 
 Dev. Eq. 160. In this case, the principles just stated are fully recognized and sustained. In addition to this, the plaintiffs, Patterson, Ogden, and Rutter, constituting a majority of the board of Directors, actually became the agents of the defendant to sell the mines thus purchased by him, and bargain for shares in the stock, and an interest in the mines. On this part of the case, it is urged by the plaintiffs’ counsel, that these acts of the plaintiffs cannot be considered as confirming the title or acts of the defendant, because it is not shewn that they knew their rights ; and the authorities cited by him sustain the position. These letters, and contracts of the plaintiffs with the defendant, are not offered as confirming his title. His title needs no confirmation ; it is at law full and complete, but simply acknowledging that it is so. It has been further urged in the argument be
 
 *74
 
 fore us, that the defendant and Roswell King fraudulently combined together to injure and defraud the plaintiffs in the sale of the land. It is sufficient on this head to say, that it is not charged in the bill. Upon the third point made by the bill, the defendant’s answer is full and satisfactory. It is charged, that, availing himself of the ignorance of the plaintiffs as to the quantity and value of the ore, which had been gotten out of the mine, he induced them to sell it to him at the price of $500, when he knew it was worth much more, and that, in truth and in fact, he had extracted from it a much larger sum — a sum much more than sufficient to pay his expenses and all that the company owed him, and that, therefore, at the time he obtained his judgment they owed him nothing. To this charge the defendant replies, that he is not skilled in gold, ore, and that in giving $500 for it, he relied upon the judgment of Mr. King, both as to the quantity and value, and he produces the letter of Mr. King, directed to the plaintiffs, to sustain his answer. Mr. King was a Stock-holder and a Director, immediately -interested in procuring from the defendant as high a price for the ore, as it was worth. It is not to be supposed, he would be willing to take less than what he believed its real value. But it is said the defendant’s answer to this charge, .when called on to state how much gold he got from that ore, is unsatisfactory and evasive. It may be so, but we consider it entirely unimportant; the sale was a fair one, and whether he realized much or little, has nothing to do with the question before .us. But the answer states facts, that show the price given was a fair one upon the whole. We see nothing in the conduct of the defendant, of which the plaintiffs have a right to complain. So far as they were concerned as proprietors, his conduct has been fair, honest and honorable, and, if in any part of it he has lost sight .of rectitude, it has been only, when listening to the suggestions and allurements of the plaintiffs themselves, in endeavoring to give
 
 *75
 
 to the mines a false and meretricious value, with a view to entice ignorant and unwary purchasers.
 

 In closing this case, we would call the attention of our professional brethren to what fell from this Court, in the case of
 
 Falls
 
 v.
 
 McAffee, 2
 
 Ire. 239. It was an action on a bond, given by the defendant on obtaining an injunction, restraining the plaintiff in working a mine. The Court after remarking upon the heavy loss the plaintiff had sustained by the operation of the process awarded against him, observe : “ The case arose early after the business “ of mining began, and tiie writ was improvidently “ awarded, without recollecting at the time, that to stop “ the working of the mine, was alike opposed by the “ public policy and the private justice due to the party, “that might be found ultimately to be the owner, and ‘ that it would rather promote all interests to appoint “ a receiver, or take some other method for having the “ profits fully accounted for. It is indeed remarkable that “ the present plaintiff had not at the first opportunity, “ moved to discharge the injunction, by submitting to have “ a receiver appointed.” We intend to express no opinion, nor even to intimate one that this is a proper case for the appointment of a receiver, at the present stage of it.
 

 The interlocutory order of the Court below is erroneous and should be reversed, and the injunction dissolved absolutely, with costs, and the plaintiffs must pay the costs of .this Court.
 

 Per Curiam.
 

 Ordered to be certified according!}'.