Nash, J.
 

 In the year 1842, the plaintiff, being indebted to the defendant, Jacob Bost, executed and delivered to kim two several bonds, one for the sum of #119, dáted the
 
 *40
 
 I3lh January of that, year, and payable one day after date, and another for $206
 
 '25,
 
 dated the 6th of January 1842, and payable the 1st of January 1843. In the Spring of 1S44, the plaintiff and defendant, Jacob, entered into a partnership for making and vending a smut machine, the patent right to which, they purchased from one L. D. Childs, and for which they executed to him, three bonds, each for $1000, payable six months after date ; two of these bonds were discharged, jointly by the obligors, and the third by the plaintiff alone. The bill charges, thas the defendant, Jacob Bost, for the purpose of avoiding the payment of his share of the last bond, given for the purchase of the patent right, and also the heavy losses incurred in the business in which they were
 
 engaged,
 
 transferred all his property to divers persons, and assigned over to the other defendant, Joseph Bost, the two bonds first mentioned, and dated the assignment as of the 21st of August, 1S47 — that the assignee took the bonds without paying any consideration, and with a full knowledge of all the above facts — and with a view to throw upon the plaintiff the payment of the whole of the judgment, obtained upon the third bond to Childs, upon which an execution was then issued — and the last payment, made by the plaintiff on it, was on the 4th of September 1847.
 

 The bill further charges, that Jacob Bost has moved to tbe State’of Mississippi, and is insolvent. The defendant, Joseph Bost, has sued the plaintiff on the two bonds, so assigned to him, taken out executions and threatens to levy on his property. The bill prays an injunction, &c.
 

 The answer of Joseph Bost is filed the 20th
 
 of October
 
 1S48. It denies, that the assignment of the two bonds to him by Jacob Bost was antedated or 'without consideration or with any fraudulent intention. On the contrary, he avers, that the assignments were made on the day they were dated, and that he jjaid cash for them, and de* nies that he purchased with notice of any equity claimed
 
 *41
 
 by the plaintiff, or that he had any knowledge of the co-partnership transactions, “but refers to the answer of his co defendant, when it comes in, in answer thereto, and as a part of his answer, and submits, whether if they be true, his rights are to be affected thereby.”
 

 The answer of Jacob Bost, the other defendant, is sworn to on the 6th of April 1849, and filed at the Spring term
 
 1819,
 
 of Lincoln Court of Equity. This defendant denies that he transferred any of his effects to defraud any of his creditors — ¡and avers that the notes in question were transferred to his co defendant for a valuable consideration, and that in cash — that he owed Joseph Bost for money borrowed, with which he purchased a tract of land in Iredell County, which was afterwards sold by the sheriff, and purchased by the defendant, Joseph.
 

 The plaintiff is clearly entitled to the aid of the Court, -in restraining the defendant, Joseph Bost, from enforcing his judgment at law, at this time. By the purchase of the patent right of the smut machine and the agreement between the plaintiff and Jacob Bost, they became partners in the business of making and vending them. Great losses were sustained by the firm and many debts incurred, for which they were jointly and severally liable ; all of which were paid by the plaintiff, as he alleges and not denied by the defendants.
 

 Before entering into the partnership, Mosto!ler was indebted to Jacob Bost in the two bonds, the subject of this dispute, which were both assigned to the other defendant, nearly five years after they became due. One falling due on the 14th of January 1842, and the other the 1st of January 1843, and the assignment, as alleged by the defendant, was on the 21 it of August 1847. By the bonds of one thousand dollars each, given for the purchase of the patent right, the plaintiff and defendant, Jacob Bost, were each a principal debtor to the obligee — but as between themselves, each was a surety for the other to the
 
 *42
 
 amount of one half of the money due on the bonds. In Equity, a surety, in respect to his liability, is regarded as a creditor and has a right to all his privileges as one,— Here, the equity of the plaintiff arises from the inability to pay or insolvency of Jacob Bost. The right of the latter to assign the notes in question was lost, when he became unable to exonerate the plaintiff from the payment of the portion of the f 10t)0 bond, for which theplaintiff was his surety and which he has paid. The debt, which Hosteller owed him, ought, in good faith, to have been retained by him as an indemnity in part of his loss. As the notes then in the hands of Jacob Bost were liable to the equitable claims of the plaintiff against him.it would be contrary to just principles, that his assignee should be placed in a better position than he was;
 
 Williams
 
 v,
 
 Helme,
 
 1 Dev. Eq. 151. Upon the insolvency of a principal, a surety may retain any funds belonging to him in his hands, and when he owes his principal, who becomes insolvent, and who assigns the debt for value, the surety may retain the amount against the assignee.
 
 Do.
 
 162. But the claim of the defendant, Joseph Bost,
 
 to enforce
 
 the collection of these notes out of the plaintiff is entirely untenable. When a note or bond is assigned after it falls due, the
 
 assignee over for
 
 valuable consideration holds it, subject to all the equities, which the debtor has against the assignor, and this upon the clearest principles of Equity. The equity, which the debtor has, is prior to any acquired by the assignee. In this case the assignment was nearly five years after the note came to maturity.— Whether, therefore, the defendant, Joseph, knew that the plaintiffhad any equity against J acob, is immaterial. He holds the notes as his assignor did. Upon another ground, the injunction ought not to have been dissolved. The answers are deficient in frankness and precision and are illusory.
 
 Little v. Marsh, 2
 
 Ire. Eq 18. It is charged in the bill, that the-assignment was without consideration.
 
 *43
 
 The answers both state, that Joseph gave a valuable consideration, in cash — but neither of them state what was the amount of the consideration. Jacob says he had borrowed money from Joseph to purchase a tract of land, which was subsequently sold under an execution against him. Joseph bought it. As to this fact (if it be one) the answer of Joseph is silent. He is content to say he paid for the notes in cash, and neither answer states at whose instance the land was sold by the sheriff, what was the amount of the debt, or what Joseph gave. Again, the bill charges the insolvency of Jacob or his inability to pay hi» debts*. Neither answer replies to it.
 

 We repeat, the answers are neither frank, full, nor precise, and are manifestly evasive.
 

 The interlocutory decree below, dissolving the injunction, is erroneous. This opinion will be certified to the Court of Equity for Lincoln County, and the defendant» must pay the costs of this Court.
 

 Per Curiam Ordered' accordingly.