## W. E. SWINDELL v. J. E. LATHAM.

(Filed 10 October, 1907).

**1. Principal and Agent—Borrowed Money by Agent—Ratification.**

A person dealing with an agent of limited powers must generally inquire as to the extent of his authority. When the principal authorizes his agent, who conducts a mercantile business for him in a different town, to buy goods only for cash, and furnishes the means therefor, he 'is not responsible for the full amount of moneys borrowed on a note made in his name by his agent for the purposes of the business.

**2. Same—Ratification—Knowledge.**

When an agent conducting a mercantile business for his principal, with authority only to buy for cash, the means being furnished therefor, exceeds this authority and borrows money on a note made by him in the name of his principal for that purpose, it is not alone sufficient that the principal receives the use and benefit in the business of the money thus borrowed to amount to a ratification of the full amount of the debt, but it must be further shown that the principal knew that the agent had thus violated his instructions. *Quære*, whether the creditor can recover the reasonable value of the benefit derived from the loan.

**3. Same—Principal's Credit—Speculation.**

An agent, without the knowledge of the principal, cannot use the credit of his principal in buying flour on their joint account for the purpose of speculation.

**4. Same—Evidence—Circumstance.**

When an agent, with limited power to buy goods for cash for his principal, who furnished the means therefor, exceeds his authority by buying upon a credit, his borrowing money upon a usurious rate of interest is, at least, a circumstance to be considered by the jury upon the question of knowledge upon the part of the one thus lending the money.

CIVIL ACTION, tried before *W. R. Allen, J.*, and a jury, at February Term, 1907, of the Superior Court of BEAUFORT County.

This action was brought to recover the sum of $3,906.25, which the plaintiff alleges is due to him from the defendant by reason of the fact that the latter, who lived in New Bern, was

conducting a mercantile business in Washington, Beaufort County, N. C., by and through his agent, A. B. Smith, and that Smith was authorized to purchase such goods, wares and merchandise as were necessary to be used in the conduct of the said business, either for cash or on credit, and that, in the usual and necessary conduct of the affairs of his principal, A. B. Smith borrowed from the plaintiff the said sum, which was used in the said business and of which the defendant derived the use and benefit. The defendant denied all of this, and averred that his agent was authorized to buy only for cash, which was to be furnished by him or procured through the bank.

The Court charged the jury as follows: 1. The plaintiff brings this action to recover money which he alleges was borrowed by the defendant's agent, A. B. Smith, for use in defendant's business of buying and selling cotton and merchandise in Washington, and that the agent, when he received the loan of the money, was acting within the scope of his authority, and that the defendant received the benefit of the money so borrowed in the prosecution of his business in Washington. 2. The defendant admits that he was doing business in Washington, by his agent, A. B. Smith, but he denies that Smith, as his agent, had any authority to borrow money, but, on the contrary, he was instructed to buy only for cash and to draw checks on the bank for the purchases so made by him, both of cotton and merchandise, and that sufficient arrangements had been made with the bank to honor all checks so drawn, and he avers that he is not liable to the plaintiff for any money borrowed by Smith from him. 3. A principal is not bound by the act of his agent unless the act is within the authority of the agent. This authority may be expressly given, but there is no evidence of such authority in this case. It may also be implied. If the principal acts in such manner and permits his agent to so conduct his business as to lead one of ordinary prudence to believe he has authority

to do a particular act, and a third party deals with the agent, relying upon this apparent authority, the principal is liable. 4. If an agent has no authority to borrow money in order to pay for goods, but is directed to buy for cash with money advanced by the principal, and the latter fails to furnish the cash, and the agent, for the purpose of promoting the business, borrows money and uses it to pay for goods for his principal, and the goods are used in said business for the benefit of the principal, then the principal is liable for the money so borrowed. 5. The Court here stated the contentions of the parties, and recited the testimony, showing its bearing upon the issues in the case. 6. If you find by the greater weight of the evidence that the defendant held Smith out as his agent, and, with his knowledge and consent, permitted the business to be so conducted by Smith as to lead a man of ordinary prudence to believe that he had authority to borrow money, and the plaintiff, while acting upon this belief, loaned money to said agent, which was used in buying goods for the defendant, you will answer the first issue "Yes." If you find by the greater weight of the evidence that the defendant failed to furnish his agent with sufficient funds to pay for goods, that he knew goods were to be bought for cash, that his agent borrowed money from the plaintiff and used the same to pay for goods, and that these goods went into the business of the defendant and were disposed of for his benefit, you will answer the first issue "Yes"; otherwise, "No." 7. If you believe the evidence in this case, the plaintiff loaned to Smith $1,548.75 in October, 1903, $857.50 on 16 February, 1904, and $1,500 on 16 December, 1904. If you further believe the evidence, the first two of these transactions are usurious, and the plaintiff would not be entitled to recover any interest thereon, and all payments made would be deducted from the principal sum. The third transaction is dependent upon the intention of the parties. If it was made for the purpose of securing a greater rate than six per cent., it was usurious, but

if otherwise it was not.   8. If you answer the first issue "Yes," you will answer the second issue, if you believe the evidence, "$1,356.25 on the first transaction, $778.75 on the second, $1,500 on the third," if you find it was usurious, or "$1,500 and interest from 16 December, 1904," if it was not usurious.   9. If you answer the first issue "No," do not consider the first and second loans any further, but you will still consider the third; and if you find from the evidence that Smith borrowed the $1,500 from the plaintiff on 16 December, 1904, and used it to buy goods for the defendant; that these goods were received by the defendant and used by him with a knowledge of these facts, then the defendant is liable therefor; and if you so find, answer the second issue "$1,500," if usurious, or "$1,500 and interest," if not usurious.   If you do not so find, and you answer the first issue "No," then you will answer the second issue "Nothing."   If you believe the evidence, and answer the first issue "Yes," you will answer the second issue "$300, less $92, leaving $207.12, with interest from 7 January, 1905."

The following issues were submitted to the jury: 1. Was A. B. Smith, prior to 13 December, 1904, authorized by the defendant to enter into the contracts with the plaintiff sued on in this case, and to charge defendant with the payment of the money received thereby?   Ans. "Yes."   2. Is the defendant indebted to the plaintiff, and if so, in what amount?   Ans. "$3,635."

There was a verdict, under the evidence and the charge of the Court, for the plaintiff, as appears in the record, and judgment was entered thereon, from which the defendant, having duly excepted to the alleged errors of the Court in the trial of the case, appealed to this Court.

*Harry McMullan* and *Ward & Grimes* for plaintiff.
*W. C. Rodman* for defendant.

SWINDELL *v.* LATHAM.

WALKER, J., after stating the case: It seems to us that the presiding Judge went too far, under the facts and circumstances of this case, in the fourth instruction given the jury, which was as follows: "If an agent has no authority to borrow money in order to pay for goods, but is directed to buy for cash with money advanced by the principal, and the latter fails to furnish the cash, and the agent, for the purpose of promoting the business, borrows money and uses it to pay for goods for his principal, and the goods are used in said business for the benefit, of the principal, then the principal is liable for the money so borrowed." We presume that his Honor, in giving this instruction, was attempting to follow the principle which he thought had been declared in *Brittain v. Westall,* 135 N. C., 492, and 137 N. C., 30, but he did not confine himself to the limit which, in that case, is prescribed to an agent in buying goods for his principal, and for this reason he erred in the instruction given to the jury, because it broadened the scope of the agent's authority as there defined. There is undoubtedly one expression in that case, as reported in 135 N. C., 492, which, when considered by *itself,* might, perhaps, have led the Judge into this error, but what is said in a judicial opinion must be read with reference to the facts of the particular case then under investigation, and also in connection with the context. In *Brittain v. Westall,* as reported in 135 N. C., 492, and again in 137 N. C., 30, there were two questions involved: (1) Whether Westall had furnished Townsend, his agent, with funds to buy the goods; and (2) whether, if he had done so, and his agent, instead of using the funds for that purpose, bought the goods on the credit of his principal, and the latter afterwards received and appropriated them, *knowing* that Townsend, his agent, had violated his instructions to buy only for cash with money supplied to him, and had bought on credit. With reference to these questions we stated several legal propositions: 1. That an agent can only contract for his principal within

the limit of his authority, and persons dealing with an agent having limited powers must generally inquire as to the extent of his authority. *Brittain v. Westall,* 135 N. C., 495. See, also, *Bank v. Hay,* 143 N. C., 326. 2. When the authority to buy or to sell is given in general terms, it is clear, in the absence of any restriction to the contrary, that the agent has the power to buy for cash or on credit, as he may deem best, and to sell in the same way. *Ruffin v. Mebane,* 41 N. C., 507. Or, if express authority to buy on credit is not given to an agent, but he is authorized to make the purchase, and no funds are advanced to him to enable him to buy for cash, he is, by implication, clearly authorized to purchase on the credit of his principal, because, when an agent is authorized to do an act for his principal, all the means necessary for the accomplishment of the act are impliedly included in the authority, unless the agent be in some particular expressly restricted. *Sprague v. Gillett,* 50 Mass., 91; *Brittain v. Westall,* 137 N. C., p. 32; *Komorowski v. Krumdick,* 56 Wis., 23. 3. On the face of the contract it appeared that Townsend was directed to buy only for cash, and, this being so, he could not, of course, buy on credit, contrary to the instruction of his principal. Whether the defendant subsequently ratified what he did, and is therefore liable to the plaintiff, is quite another and different question. *Brittain v. Westall,* 137 N. C., p. 33. This was said by us in regard to a prayer of the defendant, as follows: "The written contract introduced in evidence constituted Townsend the agent of Westall, with limited authority only. As such agent, Townsend had authority to buy lumber for cash, with money furnished him by Westall, but he did not have authority under said written contract to buy lumber on Westall's credit." 4. The contract expressly required Townsend to buy for cash, and the only possible ground of defendant's liability is, that he received and appropriated the lumber to his own use, knowing that his agent had bought it on his

credit, or that he had not provided his agent with the cash to buy lumber, in which case the. latter had implied authority to buy on credit, and that fact would also be some evidence of notice to defendant that his agent had so bought.    1 Am. and Eng. Enc. of Law, 1021, and notes; *Brittain v. Westall,* 137 N. C., p. 34. . This language was used by us when commenting upon a prayer of the defendant, as follows: "Although the identical lumber in controversy came into the possession of defendant and was appropriated by him, he would not be liable to plaintiff for its value unless he had authorized Townsend to buy on his credit, or accepted and appropriated the lumber with *notice* of the fact that Townsend had bought it on his (defendant's) credit."   We also stated that, if the agent is instructed to buy only for cash, to be furnished by the principal, and violates his instructions by buying on credit, and the principal thereafter receives and uses the goods, knowing that he has not furnished the cash with which to buy them, he is liable at least for the value of the goods to the seller, as he must have known that they were bought on credit; but if it appears that he did furnish the cash and the agent nevertheless purchased on credit, he is not liable for the price, even though he afterwards received and used the goods, if it *appears* that he did so without notice of his agent's default.

It follows from this statement of the law, as declared by the two decisions in that case, that the instruction of the Judge below was erroneous, because the defendant's liability as principal of A. B. Smith to the plaintiff was made to turn only upon whether the borrowed money had been applied to the payment for goods which were used in the defendant's business, in which event the jury were told that the defendant would be liable, not merely for the value of the goods so used by his agent in his business, or for the value of any benefit he may have derived therefrom, but for the full amount of the *borrowed money.*   The defendant lived in New Bern;

the business was carried on by his agent, Smith, in Washington. It may be that, under the real facts and circumstances of this case, the defendant did not know that his agent had violated his instruction, and his liability to the plaintiff for the amount of the *borrowed money* depended upon such knowledge. This was the ultimate fact to be established, and the jury should have been so instructed. Whether the defendant would be liable for the value of the goods actually used in his business, or for the value of any benefit derived therefrom, even if he had no notice that his agent had disobeyed his instructions, is a question which is not now before us. We simply decide that there was error in the instruction of the Court to the jury.

There are some expressions in the receipts given by A. B. Smith, the agent, to the plaintiff for the borrowed money which might indicate that they were buying flour on joint account for the purpose of speculation, using the credit of the defendant for that purpose. We may not correctly understand these receipts, and their meaning and significance may be far otherwise than would appear on their face, but it is not permissible for an agent thus to use his principal's credit, if we are right in our interpretation of these receipts. An agent cannot, in law, represent himself and his principal where their interests conflict, and without the knowledge of the latter. An agent cannot thus well serve in two capacities—for himself and his principal—because the latter's interests *may* be prejudiced even by an unconscious and unintentional desire to advance his own. *Sumner v. Railroad,* 78 N. C., 289; *Lamb v. Baxter,* 130 N. C., 67; *Mining Co. v. Fox,* 39 N. C., 61; *Atkinson v. Pack,* 114 N. C., 597. We have only referred to this matter that the intention of the parties may be made clearer at the next trial. It may be, and likely is, that the transaction is entirely free from any objectionable feature.

If the transactions between the plaintiff and the agent, A. B. Smith, were usurious, in so far as they affected the defendant, we do not see why this is not at least a circumstance to be considered by the jury upon the question as to whether the plaintiff did not know that the agent was exceeding his authority and acting contrary to his principal's instructions.

New Trial.