WILLIAM ISELIN & CO., INC., v. DAVID L. SAUNDERS, D. D. SAUNDERS, AND W. L. DAVIS, TRADING AS SAUNDERS AND DAVIS.

(Filed 29 March, 1950.)

**1. Contracts § 4: Sales § 2—**

Where a partner gives a provisional order for goods, conditioned upon approval of his copartners, and, upon refusal of his copartners to approve, gives immediate notice of such disapproval, there is no contract to purchase the goods, and it is immaterial whether the offerer was an independent dealer or a selling agent.

**2. Same—**

Where an agreement is made with an independent dealer to purchase goods, and the dealer turns the order over to another company, the purchaser is at liberty to refuse to accept the goods, since a person has the right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent.

**3. Sales § 16—**

Upon sale by sample there is an implied warranty that the bulk of the goods will correspond with the sample in kind and quality, and the purchaser is entitled to reject goods upon breach of such warranty.

**4. Principal and Agent § 7f: Sales § 2—**

Where the purchaser constitutes another his special agent for the purchase of a limited quantity of goods, and the agent places the order for double the quantity specified, the purchaser is at liberty to reject the quantity of goods delivered in excess of the quantity specified, since a party dealing with a special agent is under duty to acquaint himself with the extent of the agent's authority.

**5. Bills and Notes § 18—**

The assignee of a nonnegotiable instrument for value and in good faith before maturity nevertheless takes same subject to all defenses which the debtor may have had against the assignor which are based upon facts existing at the time of the assignment or facts arising thereafter but prior to the debtor's knowledge of the assignment. G.S. 1-57.

**6. Sales § 20—**

 Plaintiff was the assignee of an account for the purchase price of goods. *Held:* An instruction to the effect that plaintiff was entitled to recover the purchase price if the jury should find from the greater weight of the evidence that plaintiff purchased the account in good faith for valuable consideration before maturity, must be held for error, since plaintiff nevertheless took the nonnegotiable chose in action subject to all defenses which the debtor may have had against the assignor prior to the debtor's knowledge of the assignment, there being sufficient allegation and evidence in the action of such defenses.

APPEAL by defendants from *Rudisill, J.,* and a jury, at October Term, 1949, of CLEVELAND.

Civil action by assignee to collect a nonnegotiable chose in action from debtor.

There was sharp conflict between the pleadings and evidence of the parties.

The testimony of the plaintiff, a corporation of Columbus, Ohio, made out this case against the defendants, retailers of dry goods at Kings Mountain, North Carolina:

On 18 October, 1946, the defendants, acting through their agent, Consolidated Clothiers, of New York City, New York, gave the Falcon Sportswear Company, a clothing manufacturer of St. Louis, Missouri, an unconditional written order for 100 pairs of "all wool redyed serge" pants at an agreed price of $9.50 per pair. The Falcon Sportswear Company expressed 100 pairs of pants conforming to the order from St. Louis to the defendants at Kings Mountain in two equal consignments on the 23rd and 28th days of January, 1947, and forthwith assigned its account against the defendants for $950.00, the total price of the goods, to the plaintiff, which took the account in good faith and for a valuable consideration while the merchandise was en route from St. Louis to Kings Mountain. Upon the subsequent arrival of the goods at Kings Mountain, the defendants unjustifiably refused to accept or pay for them, and the express company returned the consignments to St. Louis, where the Falcon Sportswear Company declined to receive them. The plaintiff brought the action to recover the sum of $950.00 on the assignment after the defendants had refused its demand for payment.

The evidence of the defendants presented the following version of the events antedating the litigation:

The defendants had no direct contractual relations of any kind with either the Falcon Sportswear Company, or the plaintiff. On 18 October, 1946, David L. Saunders, one of the defendants, visited the office of the Consolidated Clothiers in New York City, and gave the Consolidated Clothiers, which was either an independent wholesale dealer in dry goods

or a selling agent of the Falcon Sportswear Company, a provisional order for 50 pairs of pants conforming to a sample pair of pants, which the Consolidated Clothiers then and there exhibited to him. The Consolidated Clothiers took this order from David L. Saunders on the specific condition that it would not be valid unless it should be approved by his partners, the defendants D. D. Saunders and W. L. Davis, who were then in Kings Mountain. They refused to confirm the provisory order, and immediate notice of that fact was given the Consolidated Clothiers. The defendants had no further connection with or notice of any of the matters resulting in this litigation until the consignments and the invoices covering them reached Kings Mountain. The invoices recited that the Falcon Sportswear Company was shipping the goods to the defendants on its own account, and had assigned the sale price to the plaintiff. The defendants inspected the consignment of 23 January, 1947, immediately after its arrival at Kings Mountain; discovered that it contained 50 pairs of very inferior pants, which did not correspond in kind and quality with the sample exhibited to David L. Saunders by the Consolidated Clothiers three months previously; and rejected the goods. When the consignment of 28 January, 1947, reached Kings Mountain, the defendants declined to inspect or accept it because they had not ordered it. The defendants gave the Falcon Sportswear Company prompt notice of their rejection of each of the shipments, and caused the express company forthwith to return them to St. Louis, where the Falcon Sportswear Company refused to receive them.

The court submitted this single issue to the jury: "Are the defendants indebted to the plaintiff, and if so, in what amount?" The jury answered the issue "$950.00," and the court rendered judgment for the plaintiff accordingly. The defendants excepted and appealed, assigning various excerpts from the charge as error.

*Henry B. Edwards for plaintiff, appellee.*
*J. R. Davis for defendants, appellants.*

ERVIN, J. The transactions giving rise to this litigation are susceptible of several constructions which would have afforded the defendants either complete or partial exoneration from liability to the Falcon Sportswear Company if it had sued the defendants directly upon the claim now in suit.

The Falcon Sportswear Company could not have recovered of the defendants for goods sold and delivered without establishing a contract, either express or implied, between it and the defendants, obligating the defendants to accept and pay for the goods.

All direct negotiations on the part of the defendants were had with the Consolidated Clothiers, which may have been acting in any one of three distinct capacities. It may have been a selling agent for the Falcon Sportswear Company, or an independent dealer, or a purchasing agent for the defendants.

Upon one view, the circumstances in the record harmonize with the conclusion that the Consolidated Clothiers acted either as an independent dealer, or as a selling agent for the Falcon Sportswear Company; that it offered to sell goods to the defendants either upon its own account, or in behalf of the Falcon Sportswear Company as its principal; that the defendants rejected the offer; and that in consequence no contract ever came into existence obligating the defendants to purchase goods from either the Consolidated Clothiers as an independent dealer, or from the Falcon Sportswear Company as its principal. *Dodds v. Trust Co.,* 205 N.C. 153, 170 S.E. 652.

Upon another aspect, the transactions between the parties are consistent with the deduction that the Consolidated Clothiers was an independent dealer; that the defendants gave the Consolidated Clothiers an order for goods; that the Consolidated Clothiers turned the order over to the Falcon Sportswear Company, which undertook to fill the order on its own account, and which shipped the goods to the defendants; and that the defendants refused to accept the goods from the Falcon Sportswear Company, and declined to have any dealings with it. If such was the case, the defendants did not become liable to the Falcon Sportswear Company; for they had no agreement with it. The law declares that "everyone has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent." *Arkansas Valley Smelting Co. v. Belden Mining Co.,* 127 U.S. 379, 32 L. Ed. 246, 8 S. Ct. 1308. See, also, in this connection: *Hardy v. Williams,* 31 N.C. 177; *Cincinnati Siemens-Lungren Gas Co. v. Western Siemens-Lungren Co.,* 152 U.S. 200, 38 L. Ed. 411, 14 S. Ct. 523; *School Sisters of Notre Dame v. Kusnitt,* 125 Md. 323, 93 A. 928, L.R.A. 1916D, 792; 46 Am. Jur., Sales, section 42.

Upon a third appearance, the circumstances in the record support the proposition that the Falcon Sportswear Company, acting through its agent, Consolidated Clothiers, contracted to sell certain goods to defendants by sample; that in legal consequence the Falcon Sportswear Company impliedly warranted that the bulk of the goods would correspond with the sample in kind and quality; that the Falcon Sportswear Company breached this implied warranty by shipping to the defendants inferior goods, which did not correspond with the sample in kind .and quality; and that the defendants forthwith rejected the goods because

of the breach of warranty and returned them to the Falcon Sportswear Company. If this was the situation, the defendants were not obligated to pay the Falcon Sportswear Company for the rejected goods. *Daniels v. Distributing Co.,* 178 N.C. 15, 100 S.E. 112; Willliston on Sales (Rev. Ed.), Vol. 1, section 255.

Upon a fourth view, the testimony in the record justifies the inferences that the defendants had had no dealings with the Falcon Sportswear Company, and had never held the Consolidated Clothiers out as authorized to act for them; that on or about 18 October, 1946, the defendants employed the Consolidated Clothiers as a special agent with the limited power to buy not exceeding 50 pairs of pants for them; that the Consolidated Clothiers exceeded its limited authority, and undertook to enter into a contract with the Falcon Sportswear Company in the name of the defendants, purporting to bind the defendants to purchase 100 pairs of pants from the Falcon Sportswear Company at a price of $9.50 per pair; that the Falcon Sportswear Company endeavored to perform this alleged contract on its part by shipping 100 pairs of pants in two equal consignments from St. Louis to the defendants at Kings Mountain; and the defendants forthwith refused to accept the consignments, and caused them to be returned to St. Louis, where the Falcon Sportswear Company declined to receive them. If this was the state of things, the defendants were liable to the Falcon Sportswear Company for the price of only 50 pairs of the pants. This is true because a special agent can only contract for his principal within the limits of his authority, and a third person dealing with such an agent must acquaint himself with the strict extent of the agent's authority and deal with the agent accordingly. *Graham v. Insurance Co.,* 176 N.C. 313, 97 S.E. 6; *Swindell v. Latham,* 145. N.C. 144, 58 S.E. 1010; 122 Am. St. Rep. 430; Mechem on Agency (2d Ed.), Vol. 1, section 742; 2 Am. Jur., Agency, section 96; 2 C.J.S., Agency, sections 93, 114.

Notwithstanding the testimony tending to negative or minimize liability of the defendants to the plaintiff's alleged assignor, *i.e.,* the Falcon Sportswear Company, the court instructed the jury in a portion of the charge, which is the subject of the ninth assignment of error, to award the plaintiff the full amount sued for, *i.e.,* $950.00, in response to the only issue submitted to it in case it "should find from the evidence, and its greater weight, that the account in question was sold and assigned to the plaintiff for a valuable consideration and without any notice of fault before maturity, and that the same has not been paid by the defendants."

In so charging the jury, the court committed substantial error, entitling the defendants to a new trial. The instruction contravenes the well settled principle that the assignee of a nonnegotiable chose in action,

though he buys it for value, in good faith, and before maturity, takes it subject to all defenses which the debtor may have had against the assignor based on facts existing at the time of the assignment or on facts arising thereafter but prior to the debtor's knowledge of the assignment. G.S. 1-57; *In re Wallace,* 212 N.C. 490, 193 S.E. 819; *Ricaud v. Alderman,* 132 N.C. 62, 43 S.E. 543; *Loan Association v. Merritt,* 112 N.C. 244, 17 S.E. 296; *Spence v. Tapscott,* 93 N.C. 248; *Havens v. Potts,* 86 N.C. 31; *Bank v. Bynum,* 84 N.C. 24; *Martin v. Richardson,* 68 N.C. 255; *Harris v. Burwell,* 65 N.C. 584; *Mosteller v. Bost,* 42 N.C. 39; *Lackay v. Curtis,* 41 N.C. 199; *King v. Lindsay,* 38 N.C. 77; *Moody v. Sitton,* 37 N.C. 382; *McKinnie v. Rutherford,* 21 N.C. 14; *Jordan v. Black,* 6 N.C. 30. This rule is the inescapable corollary of the bedrock proposition that the assignor of a nonnegotiable chose in action cannot confer upon the assignee a greater right than he possesses.

The verdict and judgment are vacated, and the defendants are granted a

New trial.