AYRES, Judge.
Plaintiff by this action seeks to recover of the defendants, under an alleged oral contract of sale, the purchase price of a reconditioned crankshaft. In addition to-the named defendant, James H. Hoag, individually and as the liquidator of the named defendant, was impleaded as a defendant.
The defendants deny that Natural Gas-Industries, Inc., entered into a contract with plaintiff for purchase of the machinery or that there was any intention to enter into such a contract.
The trial court obviously concluded no. contract of sale by plaintiff to defendant,. Natural Gas Industries, Inc., was established. Accordingly, plaintiff’s demands-were rejected and it has appealed.
Since the issues are primarily factual in character, a brief review of the facts-appears appropriate. John N. Brantley, defendant’s superintendent, by a phone call on January 11, 1962, from Tatum, Texas, to-the National Welding and Grinding Company, at Dallas, Texas, placed an order with that concern for a reconditioned L-3000Le Roi crankshaft to be shipped to defendant at Olla, Louisiana. Defendant had’ done business with this concern for many years and its work and services had been-found generally satisfactory. The business transacted usually consisted of the exchange of worn crankshafts for reconditioned ones for use in gasoline plants or in connection with other oil-field work. In these transactions, a used crankshaft would be forwarded to this concern in exchange for a reconditioned crankshaft. A trade-in allowance was made upon the price of the reconditioned crankshaft. In this particular instance, a worn crankshaft was forwarded to the National Welding and! Grinding Company, but was found to be unfit for reconditioning. This fact was the cause of Brantley’s call for the purchase of a reconditioned crankshaft.
Defendant had been assured by a representative of this concern that prompt service in this regard could be had and that purchases could be made at a discount of 25 percent of the price.
*372 The shipment of the reconditioned crankshaft was made the day following the telephone call. The shipment, however, became lost or misplaced and was finally, after several other telephone calls to the National Welding and Grinding Company, and after some delay, located in Alexandria and forwarded to defendant at the designated destination.
The shipment was made by plaintiff, National Crankshaft Company. This fact, however, was not, at the time, known by or called to the attention of defendant or its superintendent. While a copy of an invoice was shown to have been attached to the crate enclosing the machinery, no notice thereof was given defendant or its superintendent. It was only after the crankshaft had been received by defendant’s employees in the field and installed in its machinery that defendant was given information that plaintiff shipped the machinery and made claim as vendor for the sale price which made no allowance for a discount.
The evidence is convincing that defendant placed its order with the National Welding and Grinding Company and that it did so because of its confidence in the work and services of this concern, developed over years of satisfactory business relationship, and particularly because of the warranty of its work and merchandise. Defendant knew nothing of plaintiff at the time the order was placed or when the crankshaft was received and installed.
It may be pointed out, however, that, because of the close proximity of their business establishments, intercommunication systems, common employees, such as bookkeepers, and interlocking corporate officials and management between plaintiff and the National Welding and Grinding Company, the mix-up may be somewhat accounted for although not satisfactorily explained.
It may be appropriate to observe that the transaction took place in Texas. The phone call originated therein to a concern located in that State. The merchandise was delivered in that State to a carrier for transportation and delivery to defendant.
Plaintiff and defendants, in support of their respective positions, cite and rely upon the principles recited in 46 Am.Jur., pp. 233-234, verbo “Sales,” § 42. This section declares:
“The general rule that a person has a right to select and determine with whom he will contract and cannot have another person thrust on him without his consent is applied to sales. A private trader is privileged to exercise his own pleasure as to the parties with whom he will deal. One of the indispensable elements of a contract is the mutual consent of the contracting parties, and to support a recovery for goods sold and delivered, there must be a contract, either express or implied, between the person who ordered and the one who supplied the goods. Thus, where an order for goods is sent to one person and is turned over by him to a third person by whom the goods are shipped,- if they are received by the buyer without knowledge that the order has been so filled, there is no liability on the part of the buyer to the person by whom the order was so filled. If, however, the buyer has knowledge that the order is filled by a third person on his own account and he receives and uses the goods, the law will imply an obligation on his part to pay such third person therefor. In such a case, the buyer may return them and decline to have any dealings with the transferee ; but he cannot accept the goods and use them, and then say he never ordered the goods from the transferee and never had any contract with him. But where it appeared that A, who had purchased ice from B under a contract, becoming dissatisfied, terminated that contract and made a new contract for ice with C, and B afterward bought *373 C’s business and delivered ice to A, who had no notice or knowledge of the purchase until after the ice was delivered and used, it was held that B could not recover for the ice from A.”
To the same legal effect are the recitals contained in 12 Am.Jur., p. 532, verbo “Contracts,” § 38, which reads as follows:
“An offer can be accepted only by the offeree. To constitute a valid contract, the minds of the parties must have met on the identity of the persons with whom they are dealing. Everyone has a right to select and determine with whom he will contract and another cannot be thrust upon him without his consent. It is immaterial whether the ■offerer had special reasons for contracting with the offeree rather than with someone else.”
These principles are also recognized in 17 C.J.S. Contracts § 40, p. 665. So far .as is pertinent, this section reads:
“When an offer is made to a particular person it can be accepted by him alone, and is not transferable by him to another; nor can it be accepted by another without the offerer’s consent.”
These principles were recognized and ■upheld by the Court of Civil Appeals of Texas in Sutton v. Shanley, 192 S.W.2d 567. There, Mrs. Shanley offered her prop•erty for sale through a broker, L. M. Sutton, under the provision that the pur■chaser would permit her uncle and aunt to live on the property during their lifetime. 'One Hall, as a purchaser, was procured by the broker. After investigating Hall’s reli.ability, Mrs. Shanley executed and placed with a bank a deed to be delivered on payment of the purchase price. This price was paid by the broker who received the ■deed and who thereafter, without the vendor's knowledge, substituted one Springer as the purchaser. The court found that, when Mrs. Shanley executed and acknowledged the deed and sent it to the bank, she thought she was dealing with Hall; she had not offered the property to Springer and did not know him in the transaction at all, and, thus, having no contract with Springer, the broker was without right to substitute him instead of Hall, as Mrs. Shanley had a right to choose her own purchaser.
Thus, a purported acceptance of an offer by one other than the offeree to whom the latter has in some manner communicated knowledge of the offer is ineffectual to complete a valid contract. Polhamus v. Roberts, 50 N.M. 236, 175 P.2d 196, 170 A.L.R. 991; Nutmeg State Machinery Corp. v. Shuford, 129 Conn. 659, 30 A.2d 911, 147 A.L.R. 1168.
The principle is well recognized by the foregoing authorities that everyone has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent. Arkansas Valley Smelting Co. v. Belden Mining Co, 127 U.S. 379, 8 S.Ct. 1308, 1309, 32 L.Ed. 246; Cincinnati Siemens-Lungren Gas Illuminating Co. v. Western Siemens-Lungren Co, 152 U.S. 200, 14 S.Ct. 523, 38 L.Ed. 411; William Iselin & Co. v. Saunders, 231 N.C. 642, 58 S.E.2d 614; Parker v. Dantzler Foundry & Machine Works, 118 Miss. 126, 79 So. 82, L.R.A.1918F, 795; Boston Ice Co. v. Potter, 123 Mass. 28, 25 Am.Rep. 9.
In accordance with the aforesaid legal principles, the conclusion is inescapable that no contract of sale of the machinery was entered into by and between plaintiff and defendant, Natural Gas Industries, Inc, and, hence, there can be no recovery predicated upon that basis.
The judgment appealed is, accordingly, affirmed at plaintiff-appellant’s cost.
Affirmed.