**In re GOVERNOR'S ISLAND, A North Carolina Limited Partnership, Debtor.**

**Bankruptcy No. S–83–01529–5.**

United States Bankruptcy Court, E.D. North Carolina.

April 17, 1984.

---

Richard M. Wiggins, Fayetteville, N.C., for W.T. Barbour.

## MEMORANDUM OPINION
## AND ORDER

A. THOMAS SMALL, Bankruptcy Judge.

This matter is before the court upon the Application to Amend Proof of Claim filed on February 2, 1984 by W.T. Barbour and the objections to the application filed by the debtor and Peoples Bank & Trust Company. A hearing was held on March 19, 1984.

W.T. Barbour filed a secured proof of claim on November 9, 1983, in the amount of $1,036,997.10. The components of the claim were not enumerated. The proposed amendment reflects a secured claim in the amount of $1,237,679.00 which is made up of the following components:

a) $181,440.27—the principal and interest due on a note in the original principal amount of $128,028.00;

b) $8,000.00—attorney's fees under the deed of trust securing the $128,028.00 note;

c) $911,511.94—the balance due under a note "in the original amount of $875,-000";

d) $136,726.79—attorney's fees based on 15% of the $911,511.94 balance in (c).

There is no dispute as to item "a", the $181,440.27 balance of the $128,028.00 note, and that portion of the amended claim should be allowed, subject to the rights of Peoples Bank & Trust Company as set out herein.

By order dated March 26, 1984, this court disallowed item "b", the $8,000.00 attorney's fees, with leave to further amend.

W.T. Barbour withdrew the claim in item "d", the $136,726.79 attorney's fees, and by order dated March 26, 1984, that portion of the claim was disallowed.

This Memorandum Opinion and Order shall address item "c", the $911,511.94 balance owing on the "$875,000 note."

Peter J. Sarda, Raleigh, N.C., for debtor.

F. Stuart Clarke, Fayetteville, N.C., for Peoples Bank.

## FACTS

On May 3, 1979, William E. Tart, and wife, Ruth H. Tart ("Tart"), were the owners of an approximately 4,700 acre island in Pamlico County, North Carolina, known as "Jones Island." Tart executed a note in the principal face amount of $834,000.00 on May 3, 1979, to the Cape Fear Production Credit Association ("PCA"); the note was secured by a first lien deed of trust on Jones Island. The note provided for interest at the rate of 9¾% per annum and was payable "on demand." Subsequently, in January, 1980, ownership of the island was conveyed from Tart to the debtor which received title to the property subject to the PCA lien.

The debtor was unable to make interest payments due under the PCA note and in mid-1982 PCA sought to foreclose its deed of trust. Tart, who remained liable under the PCA note, sought the assistance of his friend, W.T. Barbour, who agreed to purchase the PCA note. At the time, the Debtor welcomed the transfer of the note to Barbour as a means of thwarting PCA's foreclosure.

The transfer of the PCA note to Barbour was accomplished on October 26, 1982, when Barbour paid to PCA the sum of $865,397.12, representing the total amount outstanding under the note. PCA indorsed and delivered the note to Barbour and also executed a separate assignment of the note and deed of trust in favor of Barbour which was duly recorded in the Pamlico County Registry.

To finance the purchase of the PCA note, Barbour obtained a loan from Peoples Bank & Trust Company ("Peoples Bank"), in the principal face amount of $875,000.00. $865,397.12 of the loan proceeds were paid to PCA on October 26, 1982 and the balance of $9,602.88 was disbursed to Barbour a day later.

To collateralize his $875,000.00 note with Peoples Bank, Barbour gave Peoples Bank a security interest in the $834,000.00 note and deed of trust he purchased from PCA. Barbour did not indorse the PCA note to Peoples Bank, but he did execute a separate Assignment of Note and Deed of Trust dated October 26, 1982 transferring the PCA note and deed of trust to Peoples Bank; this assignment was duly recorded in the Pamlico County Registry on October 28, 1982. The Assignment of Note and Deed of Trust provided that the assignee (Peoples Bank) was empowered to collect the payments due under the note. At the time of the transfer of the PCA note to Peoples Bank, the note, which was payable on demand, was past due.

Although the debtor had hoped the transfer of the PCA note to Barbour would solve the immediate foreclosure problem, the debtor was notified by letter dated November 1, 1982, that Barbour was demanding payment in full of the PCA note. Negotiations between Barbour and the debtor ensued, resulting in an agreement in which Barbour would forego foreclosure and the terms of the PCA loan would be modified to cure the default.

The parties met in Fayetteville, North Carolina, on December 7, 1982, to execute a loan modification dated December 1, 1982. The debtor clearly understood the terms of the agreement. The debtor's attorney and its general partner both testified that they did not like the terms of the loan modification, but felt they had "no choice"—if the modification wasn't signed, the island would be lost through foreclosure. When the debtor executed the loan modification agreement, it was aware that Barbour was indebted to Peoples Bank and that payments under the $128,028.00 note were to be made to Peoples Bank. Nevertheless, the debtor on December 7, 1982, was completely unaware of and had no reason to know of the assignment of the $834,000.00 PCA note by Barbour to Peoples Bank.

At the time of the loan modification, the outstanding balance under the PCA note was $865,397.12 plus interest on the principal balance of $834,000 from October 26, 1982 at the rate of 9¾% per annum.

The loan modification agreement established the loan balance as of December 1, 1982 to be $906,107.61. In addition to in-

creasing the balance outstanding, the interest rate was increased by the loan modification from 9¾% to 2½% above Peoples Bank's prime rate. The default under the PCA note was also "cured" by rescheduling the payments.

Barbour's amended proof of claim includes a schedule of interest accruals and loan repayments. The first entry shows an $875,000.00 principal balance and interest of $8,414.38 calculated at 9¾%. The second entry shows a principal balance as of December 1, 1982 of $906,107.61 "Per Loan Modification Agreement." Thereafter, the schedule reflects an interest accrual of $130,618.89 and interest payments of $125,-214.60. The interest rate used is Peoples Bank's prime rate plus 1½%. The schedule reflects principal and interest outstanding in the amount of $911,511.94 as of January 14, 1984.

A third party, Allen-Dukes limited partnership, made payments totalling $108,-214.60 to Peoples Bank which were to be credited to the PCA note. The debtor made payments to Barbour of $17,000.00 to be credited to the PCA note. There is a dispute as to whether or not an additional $28,000.00 to be credited against the note was paid by Allen-Dukes in February, 1983.

Peoples Bank filed two proofs of claim. One claim for $125,000.00 principal plus interest of $1,972.61 and interest from October 24, 1983 at the per diem rate of $41.09589 is based on the assignment by Barbour of the $128,028.00 note to secure a Barbour indebtedness to Peoples Bank. The second proof of claim is based upon the assignment by Barbour to Peoples Bank of the $834,000.00 PCA note to secure Barbour's $875,000.00 note to Peoples Bank. The amount of the second claim is $800,-000.00 plus interest of $8,793.15 as of October 24, 1983 plus interest thereafter at Peoples Bank's prime rate plus 1½% per annum. The balance due under the $875,-000.00 note from Barbour to Peoples Bank is now $750,000.00 principal plus interest from February 23, 1984 at the rate of Peoples Bank's prime rate plus 1½% per annum. Mr. Barbour is obligated to make installment payments on the $875,000.00 note and further payments may be made on the $875,000.00 note before any funds are disbursed on Peoples Bank's claim.

Peoples Bank has not objected to the terms of the loan modification agreement and Peoples Bank has not sought to foreclose under the $834,000.00 PCA note.

## DISCUSSION AND CONCLUSIONS

Throughout this contested matter, both the debtor and Barbour have confused the amount due under the $834,000.00 PCA note and the amount due under Barbour's $875,000.00 note to Peoples Bank. Barbour's claim is based entirely on the amount due under the $834,000.00 PCA note, yet the amended proof of claim refers to the balance due under a note "in the original amount of $875,000." Barbour's schedule even begins with a principal balance of $875,000.

The Debtor makes the same mistake when it argues that the amount of Barbour's claim should be the amount outstanding on the $875,000.00 note owed to Peoples Bank. To determine the amount of Barbour's claim, however, the court should look only to the balance outstanding on the $834,000.00 PCA note purchased by Barbour.

On October 26, 1983, the principal balance of the PCA note was $834,000.00 with interest accruing at the rate of 9¾% per annum; principal plus interest as of October 26, 1983 totalled $865,397.12.

Both the principal balance and the interest rate for the PCA note were purportedly changed by the loan modification agreement dated December 1, 1982. The debtor argues, however, that the loan modification is invalid because it is not supported by consideration.

In the absence of the assignment, the modification clearly would be supported by consideration. On the one hand, Barbour gave up his right to immediately seek foreclosure by extending the terms of repayment and changing the note from one payable on demand to one payable in install-

ments, and on the other hand, the debtor agreed to increase the principal balance and to increase the interest rate. The debtor contends, however, that Barbour had transferred his rights to the PCA note to Peoples Bank prior to the modification and that the loan modification was not binding on Peoples Bank without the bank's consent. If the agreement was not binding on Peoples Bank, the debtor would not have gained anything from the modification and the agreement would not be supported by consideration. To determine whether the modification of an instrument made by the assignor (Barbour) and obligor (debtor) after the assignment is binding upon the assignee (Peoples Bank), the court must look to the common law and the Uniform Commercial Code.

■ Barbour did, in fact, transfer the PCA note to Peoples Bank, but the transfer was only to collateralize his own $875,000 loan. Barbour clearly retained an ownership interest in the PCA note. Peoples Bank has a properly perfected security interest in the PCA note, but Peoples Bank is not a "holder" of the note. N.C.G.S. § 25-1-201(20). The PCA note was not indorsed to Peoples Bank by Barbour, and without an indorsement there can be no "negotiation." N.C.G.S. §§ 25-3-201(3); 25-3-202(2). Without negotiation, the transferee can not be a "holder." N.C.G.S. § 25-1-201(20). Without being a holder, Peoples Bank cannot attain the preferred status of a "holder-in-due course." N.C. G.S. § 25-3-302. Without the protection of a "holder-in-due course," Peoples Bank took the PCA note subject to "all defenses of any party which would be available in an action on a simple contract." N.C.G.S. § 25-3-306(b).

■ It is basic contract law that the obligor may generally assert against the assignee the defenses he could have asserted against the assignor. This is also true with respect to defenses which arise after the assignment but before the obligor has notice of the assignment. "Until the obligor has received notice, he is, of course, free to deal with the assignor." Calamari and Per-

illo, *Contracts,* § 18-16, n. 22 at 650 (2d ed. 1977). "[U]ntil such notice has been given ... the assignor remains in privity with the obligor...." 3 *Williston on Contracts,* § 433 at 207 (3d ed. 1960). See 4 *Corbin, Contracts,* § 894 at 589 (1951).

■ This general statement of contract law is the law of North Carolina. It is a well settled principle that the assignee of a non-negotiable chose in action, though he buys it for value, in good faith, and before maturity, takes it subject to all defenses which the debtor may have had against the assignor based on facts existing at the time of the assignment or on facts *arising thereafter* but prior to the debtor's knowledge of the assignment. (Emphasis added). *Iselin & Co. v. Saunders,* 231 N.C. 642, 646-7, 58 S.E.2d 614 (1950); See also *Amusement Company v. Tarkington,* 247 N.C. 444, 101 S.E.2d 398 (1958).

This view is also supported by the Uniform Commercial Code as adopted in North Carolina. Section 9-318 of the Uniform Commercial Code (N.C.G.S. § 25-9-318) provides:

(1) Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in G.S. 25-9-206 the rights of an assignee are subject to

(a) all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom; and

(b) any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment.

(2) So far as the right to payment or a part thereof under an assigned contract has not been fully earned by performance, and notwithstanding notification of the assignment, any modification of or substitution for the contract made in good faith and in accordance with reasonable commercial standards is effective against an assignee unless the account

debtor has otherwise agreed but the assignee acquires corresponding rights under the modified or substituted contract. The assignment may provide that such modification or substitution is a breach by the assignor.

(3) The account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the account debtor, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless he does so the account debtor may pay the assignor.

(4) A term in any contract between an account debtor and an assignor is ineffective if it prohibits assignment of an account or prohibits creation of a security interest in a general intangible for money due or to become due or requires the account debtor's consent to such assignment or security interest. (1945, c. 196, s. 6; 1961, c. 574; 1965, c. 700, s. 1; 1975, c. 862, s. 7.)

While UCC § 9–318 does not directly apply to the assignment of "instruments," the same principles apply. *Corbin on Contracts,* says

> In a negotiable instrument case where no holder in due course rights are involved, the available defenses include 'all defenses of any party which would be available on a simple contract.' UCC § 3–306(b). Since UCC § 9–318 adopts the better common law view as to when defenses are "available on a simple contract," it should be followed in interpreting § 3–306(b). Further, no difference in result should obtain between the common law and the UCC result for assignments of contract rights and assignments of instruments to persons not holders in due course. In all cases, the rules of § 9–318 ought to control what defenses against the assignor can be asserted against the assignee. 4 *Corbin on Contracts,* § 895 at 95 (1951 & Supp.1984).

There are no equitable reasons not to apply these principles of common law and the Uniform Commercial Code to this case. In fact, the equities favor their application. The debtor got precisely what it bargained for—a curing of the default and new repayment terms. The modified repayment terms were observed. Peoples Bank did not repudiate the modification and has not objected to the modified terms. If the modification is disallowed, Mr. Barbour, who came to the rescue of Tart and the debtor, will find himself in the unenviable position of having to repay the $875,000.00 Peoples Bank loan at the rate of Peoples Bank's prime rate plus 1½% (currently 14%) while receiving only 9¾% under the PCA note.

■ Since the debtor did not have notice (as defined in N.C.G.S. § 25–1–201(26)) of the assignment, Peoples Bank, without the rights of a holder-in-due course, would be bound by the modification and thus bound by the restructured repayment schedule. There is consideration for the increase of the loan balance and the increase in the interest rate, and the balance of the PCA note should be computed based on a principal balance of $906,107.61 plus interest after December 1, 1982 at the rate of Peoples Bank's prime rate plus 2½%.

Mr. Barbour's amended proof of claim is *prima facie* evidence of the claim (Bankruptcy Rule 3001(f)) and, for the most part, the computations attached to the amended proof of claim are supported by the evidence. The $108,214.60 payments made by Allen-Dukes and the $17,000.00 payment made by the debtor are credited to the PCA note. There is, however, a *bona fide* dispute, acknowledged by the debtor and Barbour, as to whether Allen-Dukes made an additional payment of $28,000.00. This amount should be easily ascertained by the parties, but if it cannot be resolved, the court will hold a further hearing on that issue.

Peoples Bank has a valid security interest in the notes which form the basis of the Barbour claims. Consequently, the Peo-

ples Bank claims have priority over the Barbour claims. Peoples Bank's claims and Barbour's claims should be consolidated under Bankruptcy Rule 3001(e)(3) with Peoples Bank having priority to the extent of the outstanding balance due under Barbour's loans to Peoples Bank. Accordingly,

IT IS HEREBY ORDERED that:

1. the portion of the amended proof of claim of W.T. Barbour for $8,000.00 for attorney's fees is DENIED WITHOUT PREJUDICE pursuant to the order of this court dated March 26, 1984;

2. the portion of the amended proof of claim of W.T. Barbour for $136,726.79 for attorney's fees is DENIED pursuant to order of this court dated March 26, 1984; and

IT IS FURTHER ORDERED that the debtor and W.T. Barbour shall determine whether an additional $28,000.00 payment was made by Allen-Dukes on the PCA note, and if so, the Barbour claim shall be reduced by that amount, but if the parties cannot resolve that dispute, a hearing shall be held; and

IT IS FURTHER ORDERED that the claims of Peoples Bank shall be consolidated under Bankruptcy Rule 3001(e)(3) with the Barbour claims and the Peoples Bank claims shall have priority ahead of the claims of W.T. Barbour to the extent of the outstanding balance due under the notes from Barbour to Peoples Bank; and

IT IS FURTHER ORDERED that, except as provided in the order, the objections of Peoples Bank and the debtor to the amended proof of claim of W.T. Barbour are DENIED.